CHARLES H. CHICK AND ISADORE E. CHICK v. GEORGE D. SISSON, FRANCIS LILLEY, AND THE SISSON & LILLEY LUMBER COMPANY.

*Deed—Delivery—Evidence—Res gestæ—Statute of frauds.*

1. A parol agreement for the exchange of standing timber for a farm, which provides for the necessary transfers by deed, is

void under the statute of frauds until the deeds are delivered.

2. Where, pursuant to a parol agreement for the exchange of land, the necessary deeds are exchanged for examination by the parties, one of whom at once submits his deed and the accompanying abstract of title to an examiner of titles, who pronounces the title defective, and the grantee on the same day informs one of the grantors of the fact, who expresses surprise at the information, and the grantee thereupon consults with his attorney on the subject, the conversations between him and the examiner and with the attorney are admissible in evidence, as a part of the *res gestœ*, in a suit brought by him to set aside the deeds; citing *Stevens v. Castel*, 63 Mich. 118.

3. If the circumstances of the manual delivery of a deed are such as to indicate a conditional, rather than an absolute, delivery, no title passes until the condition is fulfilled; and the character of the delivery must be determined by the acts or words of the parties, or by both; citing *Thatcher v. St. Andrew's Church*, 37 Mich. 268; *Stevens v. Castel*, 63 Id. 118; *Schuffert v. Grote*, 88 Id. 650.

4. A land-owner agreed to exchange the timber on his land for a farm, the value of each being fixed at $10,000. The necessary deeds were executed, and the deed of the timber was delivered to the grantees for inspection, who left it with a third person, and delivered the deed of the farm and an abstract of title, which they had agreed to furnish, to the owner of the timber, who at once submitted the papers to an examiner of titles, to whom he stated that he was about to make the trade, and wished to see if the title to the farm was perfect, and if so he desired to exchange the papers. On being informed that the record title was defective, he immediately repudiated the transaction, unless the owners of the farm would perfect the title, which one of them agreed to do, and also agreed that the deed of the timber should not be recorded. The owners of the farm made an ineffectual attempt to perfect the title. The owner of the timber filed a bill to set aside the deeds, which relief is granted on the grounds that the facts stated, and the common prudence which business men usually exercise in transactions of this magnitude, lead to the conclusions that the consummation of the trade depended upon the owners of the farm having a good record title thereto, and that there was no absolute delivery of the deeds, so as to consummate the parol agreement.

Appeal from Lake.    (Judkins, J.)    Argued March 8, 1893.    Decided April 21, 1893.

Bill to cancel certain deeds. Defendants appeal. Decree affirmed. The facts are stated in the opinion.

*Smiley, Smith & Stevens,* for complainants, contended:

1. Delivery of a deed to the grantee, for the purpose of having the deed immediately deposited with a third person *in escrow,* passes no title; citing *Gilbert v. Insurance Co.,* 23 Wend. 43; *Jackson v. Sheldon,* 22 Me. 569; *Simonton's Estate,* 4 Watts, 180; *Murray v. Stair,* 2 Barn. & C. 82; *Chadwick v. Webber,* 3 Greenl. 141.

2. A deed deposited *in escrow,* and delivered to the grantee without authority, will be declared void; citing *Abbott v. Alsdorf,* 19 Mich. 157; *Powell v. Conant,* 33 Id. 396; *Austin v. Register of Deeds,* 41 Id. 723; *Chipman v. Tucker,* 38 Wis. 43.

3. In order to pass title to land by conveyance, there must be such an actual or constructive tradition of the deed from the grantor to the grantee as puts it beyond the control of the former, and it must be accompanied by an intention to pass the title at once; citing *Martling v. Martling,* 47 N. J. Eq. 122; *Cusack v. Tweedy,* 56 Hun, 617; *Anderson v. Anderson,* 126 Ind. 62; *Ward v. Small,* 13 S. W. Rep. 1070; *Fitzgerald v. Goff,* 99 Ind. 28; Dev. Deeds, § 264.

4. Intention is the vital principle of delivery, and the mere fact that a deed has passed from the hands of the owner of the property to the person named as grantee does not, in itself, constitute or establish a delivery; citing *Walker v. Walker,* 42 Ill. 311; *Jordan v. Davis,* 108 Id. 336; *Somers v. Pumphrey,* 24 Ind. 231; *Duer v. James,* 42 Md. 492; *Hastings v. Vaughn,* 5 Cal. 315; *Ruckman v. Ruckman,* 32 N. J. Eq. 259; *Nichol v. Davidson Co.,* 3 Tenn. Ch. 547; *Weber v. Christen,* 121 Ill. 91; *McGrath v. Hyde,* 81 Cal. 38.

5. As the effect of delivery depends on intent, where it is found as a fact that a deed was never delivered it is void, although it came into the possession of the person named as grantee, and was recorded; citing *Dwinell v. Bliss,* 58 Vt. 353; and for the same reason, where a deed is handed to the grantee for inspection, or for some other temporary purpose, and there is no completion of the transfer, and no intention of giving the same effect, there is no valid delivery; citing *Gilbert v. Insurance Co.,* 23 Wend. 43; *Ford v. James,* 2 Abb. N. Y. App. 159.

6. Complainants are entitled to rescission, because:

   *a*—The express agreement was that they should be furnished a perfect record title.

*b*—All the circumstances of the transaction show that such a title was contemplated.

*c*—The defendants Sisson and Lilley expressly agreed to perfect the record title, after the defect was discovered, or voluntarily rescind, and they have not done so.

—Citing *Powell v. Conant*, 33 Mich. 396; *Scadin v. Sherwood*, 67 Id. 230; *Allen v. Atkinson*, 21 Id. 351; *Platt v. Newman*, 71 Id. 112; *Noyes v. Johnson*, 139 Mass. 436; *Hartley v. James*, 50 N. Y. 38; *Moore v. Williams*, 115 Id. 586; *Irving v. Campbell*, 121 Id. 353; *Vought v. Williams*, 46 Hun, 638; *Page v. Greeley*, 75 Ill. 400; *Turner v. McDonald*, 76 Cal. 177; *Sheehy v. Miles*, 93 Id. 288; *McCroskey v. Ladd*, 28 Pac. Rep. 216; *Swayne v. Lyon*, 67 Penn. St. 436; *Abbott v. James*, 111 N. Y. 673; *Richmond v. Gray*, 3 Allen, 27; *Cunningham v. Sharp*, 11 Humph. 116; *Hightower v. Smith*, 5 J. J. Marsh. 542; *Chapman v. Lee*, 55 Ala. 616; *Dobbs v. Norcross*, 24 N. J. Eq. 327; *Vreeland v. Blauvelt*, 23 Id. 483; *Cornell v. Andrews*, 35 Id. 7; *Fleming v. Burnham*, 100 N. Y. 10.

*Uhl & Crane*, for defendants, contended:

1. A deed voluntarily placed in the hands of the grantee is never *in escrow*; citing *Dawson v. Hall*, 2 Mich 390; *In re Hicks*, 20 Id. 280; *Braman v. Bingham*, 26 N. Y. 483.

2. There can be no rescission of a contract for the sale of lands, which has been executed by delivery of the conveyance and the payment of the purchase money, unless such contract has been tainted by actual fraud; citing *Abbott v. Allen*, 2 Johns. Ch. 519; *Gouverneur v. Elmendorf*, 5 Id. 79; *Leggett v. M'Carty*, 3 Edw. Ch. 124; *Woodruff v. Bunce*, 9 Paige, 443; *Patton v. Taylor*, 7 How. 133; *Noonan v. Lee*, 2 Black, 499; *Peters v. Bowman*, 98 U. S. 56; *Haldane v. Sweet*, 55 Mich. 196, 58 Id. 429; and relief will not be afforded even on the ground of fraud, unless it be made a distinct allegation in the bill, so that it may be put in issue by the pleadings; citing *Patton v. Taylor*, 7 How. 133.

3. This Court must inquire into the facts in this record, and form its own conclusion; citing *McCullough v. Day*, 45 Mich. 554.

GRANT, J. The object of this suit is the cancellation of two deeds,—one executed by complainants to defendants Sisson and Lilley, and the other executed by Sisson and Lilley to the defendant company. The hearing was in open court, and decree rendered for complainants.

Complainant Chick was the owner of certain pine lands

situated in the county of Lake.    Defendants Sisson and
Lilley were the owners of a farm in the county of Ottawa.
In October, 1891, negotiations were entered into for an
exchange of these lands, which resulted in a parol agree-
ment for the exchange of the timber on the lands for the
farm, which fixed the value of each at $10,000, and pro-
vided for the necessary transfers by deed.

The first question arises upon the delivery of the deed.
The agreement rested in parol until the deeds were
exchanged and delivered. If there was no absolute delivery
of the deed, the agreement is void under the statute of
frauds.

The parol agreement was reached on Saturday, October
10, in the forenoon.    No dispute arises as to the terms
of the parol agreement, except as to whether there was an
understanding between the parties that Sisson and Lilley
had a complete title of record to the farm.    Mr. Chick
testified that at the final conversation, which resulted in
the agreement to exchange, he asked Mr. Sisson if the
title to the farm was perfect, to which he replied that it
was; that he had two abstracts,—one made when they
bought the farm, and the other made when they borrowed
some money upon it.    One Mr. Long, a stockholder of
the defendant company, held a mortgage upon the farm.
This was to be discharged.

Mr. Chick's statement of the transaction is as follows:
He left defendants' office about noon of October 10 to
have his deed drawn and executed, and also the deed of
another piece of land which he had sold to Sisson and
Lilley, but which has no connection with this transaction.
After the execution of the deeds by himself and wife, he
started with them for the office of Sisson and Lilley.    He
met Sisson in front of the office of the Michigan Trust
Company, Sisson and Lilley's office being directly above.
Sisson asked him if he had his papers.    Chick replied

that he had, and handed them to him. Sisson said they could not get theirs out before Monday. Chick at that time handed Sisson two deeds,—the one in dispute here, and one conveying the other land above mentioned. Sisson handed the deeds back to Chick, saying:

"You had better leave them with the Michigan Trust Company's office, or you will lose them."

Chick replied:

"You are better acquainted with them than I. You had better hand them to the clerk."

And he did so, saying that he wanted to leave the papers till the first of the week. Chick handed the deeds over to let him look at them, and to show him that they were made out, and did not intend a delivery by so doing. He met Mr. Sisson Monday forenoon, who told him that the deed was written out, but not yet signed by their wives, and to come up to their office after a while. He went about noon, when Mr. Lilley handed him the deed of the farm, the discharge of the mortgage, and the abstracts, saying:

"There are your papers, all perfect. You can get the mortgage discharged, and charge it to us."

Mr. Chick took them, and immediately left the office, saying he would look them over. He went directly to a Mr. Beckwith, and within five minutes placed the papers in his hands for an examination of the title, telling him that he was about to make a trade with Sisson and Lilley, and wanted to see if the title was perfect, and if it was he wanted to exchange the papers. He went to Mr. Beckwith's office about half past 1, when Mr. Beckwith told him that Sisson and Lilley had no title of record to 180 acres of the farm, and that the abstract showed the title thereto to be in one Briggs. Mr. Chick took the

papers, and went directly to the office of Sisson and Lilley, but found it locked. He found Mr. Lilley about 6 o'clock, and told him that he had brought the papers back, and that the title was not good. Mr. Lilley said he knew nothing about any break in the title, but supposed it was good, to which Chick replied that he was not getting that kind of a title; it would cause a lawsuit. After some conversation, Mr. Chick took the papers, and went directly to his attorney, Mr. Smiley, who gave him the same advice in regard to the title as did Mr. Beckwith. Mr. Smiley and Mr. Chick then went to the Trust Company's office, and found that Sisson and Lilley had received the deed for the pine timber. Mr. Chick met Sisson, and informed him of the break in the title. Sisson was surprised, and said they had it looked over when they purchased it, and the title was then pronounced good; that there seemed to be a mistake; and that, according to the abstract, the title was not good. On the same evening, Mr. Chick and Mr. Smiley went to Sisson's house. Sisson telephoned for Mr. Lilley to come, but Lilley replied he was not feeling well and could not. In that conversation, Mr. Sisson said they had better declare the trade off, to which Chick assented. It was finally, however, arranged that Sisson and Lilley should have a reasonable time to fix the title up, and that meanwhile the deed from complainants should be left with the Michigan Trust Company, and the papers relating to the farm should be left with Mr. Smiley. Mr. Sisson agreed not to record the papers, nor make any transfer of the property. Previous to this conversation the deed from complainants had been given to Mr. Lilley, who then had it in his possession.

On October 12, Sisson and Lilley executed a deed of the pine timber to the Sisson & Lilley Lumber Company, whose stockholders were Sisson, Lilley, Long, and Volmer.

October 14, Sisson and Lilley sent the deeds from complainants to them, and from them to the defendant company, by one of their employés, to the register of deeds of Lake county, with instructions to have them recorded immediately, and with instructions to said employé to remain until they were recorded, and then to bring the deeds back with him; all of which was done.

Mr. Beckwith fully corroborates the complainant's statement as to the examination of the abstract, and what complainant then said to him. Mr. Smiley also fully corroborates complainant in his statement of the conversation above given, which occurred betweeen him, Chick, and Sisson.

On Thursday, the 15th, Mr. Smiley, having heard nothing from the defendants in regard to the matter, went to Mr. Sisson, and told him he was ready to deposit the papers. Mr. Sisson then informed him of the recording of the deeds. When told that this was contrary to the understanding, Sisson replied that he could not help it; that Lilley and Long overruled him, and recorded the papers against his protest. Mr. Chick was then absent, and Smiley immediately wrote him of the situation. Upon his return he and Smiley went to see Sisson and Lilley, and asked them what they were going to do. They replied that they were doing everything in their power to find the heirs of Mr. Briggs; that they had got track of them, and were going to get the title all right; that they wanted Chick to wait a little while longer, and see if they could not get this cleared up. Mr. Chick did not want to do it, but he (Smiley) advised him to give them a little more time.

October 13, 1891, Sisson and Lilley wrote a letter to Mr. Chick, in which they said, "I shall, of course, make the title to the farm good."

Defendants failed to make the title good, refused to

surrender to complainant Chick his deed, and thereupon, on December 5, 1891, complainants filed this bill.

Defendants Sisson and Lilley admit that they supposed that they had a good record title to the farm, and were very much surprised to find that they had not. They made persistent, but ineffectual, efforts to cure the defect. They say that there was no conversation about the title at all until after the trade had been made and closed up. Mr. Sisson testified that in the conversation between him and Chick and Smiley, on the evening of the 12th, he told them that, so far as he was concerned, he would use all his efforts to have the papers deposited with the Trust Company or Mr. Smiley, and to have the matter settled up; that he was going to the mill, and would be back Thursday, and would try to have the matter in shape to make a disposition of the papers, if they would agree to it. They say that their efforts to cure the defect in the record title were not in consequence of any agreement or talk about the title, but that they considered it their duty to perfect the title, if possible. Complainants' deed of the pine land was not left *in escrow* with the Trust Company, but for the sole purpose of having the necessary deeds made out to consummate the arrangement between them and Mr. Long and the defendant company. Mr. Lilley testified that he was about to mail the deeds to the register of deeds of Lake county for recording, when Mr. Long said to him that it would not be safe to send that amount of deeds by mail, and thereupon he caused them to be sent as above stated. Mr. Lilley admits that Mr. Sisson told him Tuesday morning that he did not want the deed put upon record, because Chick was dissatisfied with the title, and that he knew, if it had been left to Sisson, he would not have put it on record.

1. It is insisted that the conversation between Chick and

Beckwith, which took place immediately after the receipt of the papers, and the conversation between Chick and Smiley, which took place just after his interview with Lilley, are incompetent. We cannot concur in this view. They were admissible as part of the *res gestœ* under the rule laid down in *Stevens v. Castel*, 63 Mich. 118, and authorities there cited.

2. Manual delivery is not always delivery in law, so as to operate to pass the title. If the circumstances be such as to indicate a conditional, rather than an absolute, delivery, then no title passes until the condition be fulfilled. The character of the delivery must be determined by the acts or words of the parties, or both. *Thatcher v. St. Andrew's Church*, 37 Mich. 268; *Stevens v. Castel, supra; Schuffert v. Grote*, 88 Mich. 650.

In so far as there is a conflict of evidence in this case, we are not disposed to disturb the conclusion reached by the court below, before whom the witnesses appeared and testified. Fortunately, however, there is but little conflict in the evidence. The facts that an abstract was to be furnished; that it was furnished with the deed of the farm; that complainant Chick immediately caused the abstract to be examined; that, upon ascertaining the defect in the record, he immediately repudiated the transaction, unless the grantors would make the title good; that his deed was deposited with the Trust Company after he had handed it to the defendants Sisson and Lilley; the statement made by him to Beckwith within five minutes after he received the abstract and the deed, and before he had any reason to suspect that the title was not good; that Sisson immediately agreed, when the defect was shown to him, that the deed should not be recorded; that the grantors made efforts to complete the title; and the common prudence which business men usually exercise in transactions of this magnitude,—lead to the following conclu-

sions: (1) That the consummation of the trade depended upon the defendants Sisson and Lilley having a good record title to the farm; and (2) that there was no absolute delivery of the deeds, so as to consummate the parol agreement.

Decree affirmed, with costs.

The other Justices concurred.