FANNY E. THATCHER AND ERASTUS THATCHER v. THE
WARDENS AND VESTRYMEN OF ST. ANDREW'S
CHURCH OF ANN ARBOR.

*Validity of Trust Deed—Delivery—Power of Alienation.*

The Supreme Court will not on error examine into the sufficiency
of the evidence to support the finding of facts in the court
below.

Delivery of a deed is essential to pass title; its whole object is
to indicate the grantor's intent to give effect to the instru-
ment.

The delivery of a deed is not necessarily a transfer of the pos-
session of the instrument to the grantee and an acceptance
by him; but it is that act of the grantor, indicated by acts
or words or both, whereby his intention to perfect the trans-
action is shown by a surrender of the instrument to the
grantee or to some third person for his use and benefit.

Acceptance of a deed may be after the grantor's death where the
act of delivery is a continuing one, such as leaving it on
deposit to be accepted afterwards if not recalled before.

It is sufficient delivery of a deed if the grantor, intending thereby
to give it effect, leaves it with the conveyancer to be after-
wards delivered; and sufficient acceptance if grantees who
knew nothing about it when it was drawn, assent to it after-
wards.

A trust need not fail for want of express acceptance by the
trustee.

When a deed of trust gives the trustees power to dispose of the
property at their option, the "absolute power of alienation"
is not suspended, even if never really exercised.

A trust is forever ended upon the execution and delivery by the
trustees of a conveyance under the absolute power of aliena-
tion.

A conveyance under the power of alienation in a trust deed
passes a good title to the grantee.

If apt words are used, no particular form is needed for the cre-
ation of a power of alienation in a deed of trust.

Deeds are to be held effectual where their language admits of it
under the rules of law applying thereto.

In construing deeds words must not be needlessly rejected as of
no effect, nor the punctuation be allowed to alter the plain
meaning.

A deed conveyed certain lands to trustees named in it, and also "all my household goods and personal property," etc.,   *   * "to have, hold, use and enjoy the same, and lease, or dispose of the same, or cause the same to be used, and to receive the rents, profits and income thereof, and to use or dispose of the same on trust," etc., and gave them authority in certain emergencies to temporarily raise money upon the property by mortgage or otherwise.   *Held* that the power of alienation here given was meant to cover the real as well as the personal property, some of the words being apt if applied to the real estate, and not so if applied to the personalty.

The disposition of the fund accumulated under a deed of trust cannot be considered in an action of ejectment, which merely puts in issue the legal title to the property deeded.

So long as a title is in trust, the validity of the reversion thereof does not properly come under discussion.

Error to Washtenaw.    Submitted June 8.    Decided Oct. 9.

EJECTMENT.    The facts are in the opinion.

*A. McReynolds* and *E. Thatcher*, for plaintiffs in error. The general policy of American law tends to the abrogation of rules against champerty and maintenance. *Maybin v. Raymond*, 4 Amer. Law Times, 21; Comp. L., § 7427 overruling *Backus v. Byron*, 4 Mich., 535. The acceptance by trustees of a duty imposed cannot be presumed, but must be proved. *Johnson v. Farley*, 45 N. H., 505; *Roosevelt v. Carow*, 6 Barb., 190; *Woodbury v. Fisher*, 20 Ind., 387. Delivery after the grantor's death is not lawful. *Jackson v. Leek*, 12 Wend., 105; *Spencer v. Carr*, 45 N. Y., 406; *Jackson v. Phipps*, 12 Johns., 418. A trust-deed is void if the power of alienation can be suspended by it for more than two lives, which must be designated by the deed. *Coster v. Lorillard*, 14 Wend., 265; *Tucker v. Tucker*, 1 Seld., 408; *Amory v. Lord*, 5 Seld., 403; *Hawley v. James*, 16 Wend., 61; *Thompson v. Clendening*, 1 Sandf. Ch., 387; *Yates v. Yates*, 9 Barb., 324; *Hone v. Van Schaick*, 20 Wend., 564; *McSorley v. Wilson*, 4 Sandf. Ch., 515; *Jennings v. Jennings*, 7 N. Y., 547; *King v. Rundle*, 15 Barb., 139.

*Alpheus Felch* and *Beakes & Cutcheon* (on brief) for defendants in error. An attorney must not purchase from his client, *pendente lite*, the subject matter of the suit of which he has charge, even in his wife's name. *Hall v. Hallet*, 1 Cox Ch., 140; *Wood v. Downes*, 18 Ves., 120; *Simpson v. Lamb*, 7 El. & Bl., 84; *Gray v. Emmons*, 7 Mich., 533; *Arden v. Patterson*, 5 Johns. Ch., 44; *Berrien v. McLane*, 1 Hoffman's Ch., 421; *Welles v. Middleton*, 1 Cox Ch., 112; *Merritt v. Lambert*, 10 Paige, 352; *Wallis v. Loubat*, 2 Den., 608; *Matter of Bleakley*, 5 Paige, 311; *Thurston v. Percival*, 1 Pick., 415; *Lathrop v. Amherst Bank*, 9 Met., 491; *Wright v. Proud*, 13 Ves,, 138; *Henry v. Raiman*, 25 Penn. St., 354. A conveyance to one's attorney is presumptively bad, until the latter shows the contrary. *Edwards v. Meyrick*, 2 Hare, 68; *Howell v. Ransom*, 11 Paige, 540; 1 Perry on Trusts, § 202. Comp. L., § 7427, is copied from Sec. 103 of the New York code of procedure which is held not to have changed the rule against purchasing from clients. *Barry v. Whitney*, 3 Sandf. Sup. Ct., 696; *Anon.*, 16 Abb. Pr. (N. S.), 430. See *Stevens v. Adams*, 23 Wend., 57; 26 Wend., 451; *Scott v. Elmendorf*, 12 Johns., 316; *Carpenter v. Sixth Ave. R. R. Co.* 1 Amer. Law Reg. (N. S.), 417. Delivery of a deed to a third person, intending thereby to make it valid as a conveyance, and with authority in the holder to keep it for and deliver it to the grantee, is sufficient. 2 Washb. on Real Prop., 606, 611; *Turner v. Whidden*, 22 Me., 121; *Stewart v. Weed*, 11 Ind., 94; *Guard v. Bradley*, 7 Ind., 600; *Phillips v. Houston*, 5 Jones (Law), 302; *Mitchell v. Ryan*, 3 Ohio St., 377; *Adams v. Adams*, 21 Wall., 185; *Hosley v. Holmes*, 27 Mich., 416; *Ellis v. Secor*, 31 Mich., 185; *Wallace v. Harris*, 32 Mich., 380. The absolute power of alienation is not suspended except where there is a contingent remainder, and the contingency has not occurred. *Kane v. Gott*, 24 Wend., 641; *Gott v. Cook*, 7 Paige, 521. No particular form of words is needed to create a power of sale; any words will do it that impose a duty on a trustee which he cannot execute without a sale (2 Perry on Trusts,

§ 766; *Mandlebaum v. McDonell*, 29 Mich., 78; *Going v. Emery*, 16 Pick., 107; *Savings Bank v. Ross*, 11 Allen, 442; *Tait v. Lathbury*, L. R. 1 Eq., 174; *Hamilton v. Buckmaster*, L. R. 3 Eq., 323; *Rankin v. Rankin*, 36 Ill., 293; *Stall v. Cincinnati*, 16 Ohio St., 169; Hill on Trustees, 342, 471; 2 Spence's Eq. Jur., 366) such as an assignment in trust to pay debts. *Wood v. White*, 4 Mylne & Craig, 481.

MARSTON, J. Defendants in error brought an action of ejectment to recover possession of certain lots situate in Ann Arbor. From the facts found by the court the parties claimed title to this property through Minerva E. Mundy who was owner thereof in fee simple on the 20th day of June, 1862. Upon that day she executed a trust deed of this property under which the plaintiff below claimed title; to this deed a number of objections were raised. It also appears that Mrs. Mundy died in April, 1871, and that in October, 1873, her only surviving heirs conveyed the premises in question by warranty deed to Fanny E. Thatcher, the wife of Erastus Thatcher; that Erastus Thatcher then was an attorney at law, and was at the time of such conveyance the solicitor for said heirs in a cause then pending in court. This conveyance plaintiffs below attacked as being champertous, against public policy and therefore absolutely void; that May 13th, 1875, said heirs, by quit-claim deed, conveyed the premises in question to plaintiffs below. This sufficiently shows the claim of title made by each party. If the trust deed was and is a valid instrument, then plaintiffs below would be entitled to recover. Even if invalid they still claim they were entitled to recover, if the deed from the heirs to Mrs. Thatcher can be held void, and upon this theory they recovered in the court below. The argument took a very wide range and the several questions raised were discussed in this court thoroughly and exhaustively. We have considered it proper to first examine the trust deed of June 20th, 1862, because if we find that a valid, legal instrument, it will render wholly unnecessary any examination of the other questions discussed.

We will consider the objections to this trust deed in their regular order.

I. That the facts and circumstances, with reference to delivery and acceptance set forth in detail in the finding, do not show a lawful delivery or acceptance. Reference was made as to the insufficiency of the evidence to sustain the findings, but this question we cannot examine into upon this record. We must take the finding of facts by the court as correct, and dispose of the questions here raised upon that assumption.. It appears from the finding of the court that upon executing this deed Mrs. Mundy left it with Mr. Morgan, the attorney who had prepared it, where it remained until after her death, when he left it at the register's office for record at the request of one of the trustees therein named; that during this time, between its execution and her death, she remained in possession of the property, exercising exclusive control over the same, and in March, 1871, she conveyed a part of these premises to Wellington D. Smith; that she had no conversation with the trustees named in the deed or any of them, after its execution, nor were any of them, except Lemuel and Ulysses T. Foster, aware of its execution until after her death; the former, when he first learned of its execution, a few days after the date thereof, approved of and assented to what had been done, but did nothing farther in the way of accepting the trust, other than to request Mr. Morgan to retain it as it would probably be safer in his hands than elsewhere. The court also found "that Mrs. Mundy did or said nothing more in the way of delivering said deed, but it was her intention to do whatever was necessary, to make the deed valid and effectual, and that the delivery to or leaving it with Morgan was intended by her to give it effect as a valid instrument. At the time of the execution, acknowledgment and leaving of said deed with said Morgan by Mrs. Mundy for the grantees, it was explained to her by Mr. Morgan that that was a good and sufficient delivery of it to make it operative."

One of the essential requisites to the validity of a deed, so as to pass the title, is delivery. Even although in all

other respects it has been properly executed, yet it does not follow that the title to the property passes; the grantor yet retains control of the instrument, and may deliver it, absolutely, conditionally, or not at all. The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee and an acceptance by him, but it is that act of the grantor, indicated either by acts or words or both, which shows an intention on his part to perfect the transaction, by a surrender of the instrument to the grantee, or to some third person for his use and benefit. The whole object of a delivery is to indicate an intent upon the part of the grantor to give effect to the instrument. The deed may be delivered to the grantee, or to a stranger unknown to the person for whose benefit it is made, and it has been held that such was a good delivery, when assented to by the grantee, after the death of the grantor. *Hatch v. Hatch*, 9 Mass., 307; *Foster v. Mansfield*, 3 Met., 412; *Belden v. Carter*, 4 Day, 66; *Doe v. Knight*, 5 B. & C., 671. The delivery to a third person unconditionally for the use of the grantee gives effect to the deed. *Concord Bank v. Bellis*, 10 Cush., 278, and this even although the latter is not aware of the fact, if he subsequently assents. Cases cited, also *Buffum v. Green*, 5 N. H., 71; *Cooper v. Jackson*, 4 Wis., 553; *Wesson v. Stephens*, 2 Ired. Eq., 557; see also *Ellis v. Secor*, 31 Mich., 187; *Wallace v. Harris*, 32 Mich., 397; *Home Ins. Co. v. Curtis*, Id., 403.

So we have seen, that acceptance by the grantee, if necessary to prove an actual acceptance, may be made in certain cases even after the death of the grantor. And cases which hold that an acceptance, at a time subsequent to that of delivery, would not be sufficient to give validity to the deed, concede, that where the act of delivery is in its nature a continuing one, as leaving the deed on deposit, to be afterwards accepted by the grantee, a subsequent acceptance would be sufficient. Of course the deed where left on deposit this way might before acceptance be recalled, but until recalled might be accepted. *Hulick v. Scovil*, 4 Gilm., (9 Ill.), 177; *Canning v. Pinkham*, 1 N. H., 353; *Maynard v. Maynard*, 10 Mass., 456; *Church v. Gilman*, 15 Wend., 660.

Under the finding we have no doubt but that there was in this case a valid delivery and acceptance of the deed. At the time of its execution she left it with Mr. Morgan. In so doing "it was her intention to do whatever was necessary to make the deed valid and effectual; and the delivery to or leaving it with him was intended by her to give it effect as a valid instrument." She at this time was informed by her attorney that such "was a good and sufficient delivery of it to make it operative."

We are of opinion therefore that under the facts found by the court there was a sufficient delivery and acceptance of this deed to render it, valid and effectual.

Even if an express acceptance by all the trustees could be considered necessary, which we do not understand to be the law, and the court had expressly found no such acceptance, yet it would not follow that the trust thereby had failed. "It is a well settled principle in equity that a trust shall not fail for want of a trustee." "Equity never suffers a trust to fail on account of the neglect or refusal of the trustee to act, but if necessary will either appoint a new trustee, or treat the holder of the legal title as such." Adams' Equity, 164 and n.

II. That no power was contained in the deed under which the trustees could sell and convey the real estate. This objection may be considered with the next, which hinges thereon, viz.: that the trust was void under §§ 4081–4082 of the Compiled Laws, in that it suspended the power of alienation for more than two lives.

We think it is a self-evident proposition that the "absolute power of alienation" is not suspended, where the instrument gives the trustees power to dispose of the property at their option. Where power is given to convey the trust estate, the absolute power of alienation can in no possible way be said to be suspended. If such a power is exercised as it may at any time, the trust is at once and forever, upon the execution and delivery of the conveyance, at an end, and cannot be revived, and that such a power is good when contained in an instrument which without it would be invalid,

there can be no doubt.    A conveyance under such a power would be good and would pass a good title to the grantee. In order to render the instrument invalid under our statute the power of alienation must be suspended, and the time it is so suspended must be for over two lives in being at the creation of the estate, or at least so that it may be so suspended,—but there is no absolute suspension whatever where the trustees have power to sell.    It is true they may not dispose of the estate, but it is not a question of what they may or may not in fact do, but one of power.    Have they power to sell, or is the power of sale suspended absolutely for the prohibited period?    If the former, the instrument is valid; if the latter, invalid.    *Belmont v. O'Brien*, 12 N. Y., 394; *Mason v. Mason*, 2 Sandf. Ch., 432; *Hawley v. James*, 16 Wend., 153, per Bronson, J.; *Hunter v. Hunter*, 17 Barb., 90; *Nelson v. Callow*, 15 Sim. Ch., 353; *Cresson et al. v. Ferree*, 70 Pa. St., 446.    The power being one which may be exercised at any time before the determination of the limitations which precede the ultimate one, renders the trust valid.    Beyond this we do not express any opinion as to the correctness of the rule laid down in New York as to the proper construction of the statute.

Did then the instrument in question in this case contain such a power?

It is generally conceded at the present day that where apt words are used to create such a power no particular form is necessary, and it is also a universally recognized rule in the construction of instruments, that they are to be held valid and effectual, rather than invalid, where such a construction can fairly be given them under the language used and the rules of law applicable thereto.    The grantor in this instrument grants, bargains, sells and conveys unto the trustees named, the lands therein described, "together with the appurtenances; and does also bargain, sell, assign and transfer to said trustees and the survivors or survivor, or successors of them as such trustees, all my household goods and personal property of any and every kind, to have, hold, use and enjoy the same, and lease or dispose of the same, or cause the same to be used, and to receive the rents,

profits and income thereof, and to use or dispose of the same on trust, and for the uses and purposes following:" And they are also in certain emergencies given authority to temporarily raise money upon the property by mortgage or otherwise. To our mind it seems clear that the power here given is general and is intended to cover both the real and personal property. Not only this but some of the words are, when applied to or in connection with real estate, fit and appropriate, but wholly wanting in this respect when applied to personal property. It is not disputed but that the authority here given to "receive the rents, profits and income thereof" are and were intended to apply to and authorize a leasing of the real estate, yet they form a part of the same clause which contains the authority to "lease and dispose of the same." They are inappropriate and meaningless when applied to personal property, and yet they may just as properly be held applicable thereto as may the words "lease and dispose." We are to give effect to the language of the party and are not at liberty to reject any of the words used as meaningless and of no effect, unless forced so to do. The authority here given follows the description of both the real and personal property, and so far as applicable, must be severally applied to the two kinds of property. Had the punctuation in this deed been different and the words, "to have, hold, use" etc. been introduced as the commencement of a new sentence, no reasonable doubt could have existed as to its being applicable to the different kinds of property which preceded it. It is laid down as a rule in reading and construing deeds, that no regard is had to punctuation, since no estate ought to depend upon the insertion or omission of a comma or semicolon. And although stops are sometimes used, they are not regarded in the construction or meaning of the instrument. 3 Washburn on Real Estate, 628. We are of opinion, therefore, that full power was given the trustees to sell this property at any time, and that this removes any objection which might otherwise exist on account of a supposed suspension of the power of alienation.

Various objections were made to the validity of this

deed under our statute abolishing uses and trusts, except as therein permitted, and within which exceptions this case, it was claimed, did not come.   Even admitting that the directions as to the disposition of the rents and profits were invalid, yet the power to sell would be valid, and the only question that could therefore arise would be as to the proper disposition that should be made of the surplus or accumulated fund.   Whether this accumulated fund should go under § 4107 to the person presumptively entitled to the next eventual estate as held in *Haxtun v. Corse*, 2 Barb. Ch., 518, and in *Kilpatrick v. Johnson*, 15 N. Y., 322, we need not determine, as such question cannot properly be raised in an action of ejectment where only the legal title to the real estate is in issue.

The objection that the reversion to the school district is void does not at present concern the plaintiffs in error in this case.   Should the title of the church for any reason cease to exist and the school district claim under this trust deed, then the validity of the grant to the district would properly arise.

Our statute, §§ 3062 and 3074, fully authorizes the conveyance in trust for the purpose mentioned in this deed and vests the title in perpetual succession in the trustees provided for by the statute in trust for the church.   We are of opinion that the objections made to the validity of this trust deed are not valid, and that it is unnecessary to discuss the other questions raised.

The judgment must be affirmed with costs and the record remanded for farther proceedings under the statute.

The other Justices concurred.