TOWER *v.* DETROIT TRUST CO.

1. VENDOR AND PURCHASER—BREACH—FORFEITURE.
   The vendor in a contract for the sale of real property is not limited to the method of enforcing forfeiture authorized by Act No. 200, Pub. Acts 1911, which provided that the vendor might bring proceedings in chancery or recover possession by summary proceedings or in any manner authorized by law, if he elected to adopt any of the existing remedies, instead of selecting the means specified in the statute.

2. SAME—EQUITY—TENDER—RECEIVER.
   While the court of equity will not favor a forfeiture, it sometimes does declare rights of a contract vendee forfeited; and in a case where the receiver of a construction company, which was insolvent, applied to the court for an injunction against petitioner's forfeiting its rights under a land contract, but was unable to tender the sum in default or offer to do so in the near future, and where it appeared that the purchaser was hopelessly insolvent, the court would recognize the forfeiture attempted in behalf of the vendor and declare it.

Appeal from Wayne; Van Zile, J. Submitted April 23, 1915. (Docket No. 128.) Decided March 31, 1916.

Petition by Ray J. Tower against the Detroit Trust Company, receiver of the Chippewa Construction Company, for the cancellation of a certain contract made between petitioner and said construction company, and to dissolve an injunction restraining petitioner from forfeiting certain contracts with said construction company. From an order denying relief, petitioner appeals. Reversed.

*R. A. Hawley,* for petitioner.

*Corliss, Leete & Moody,* for defendant.

BIRD, J. Acting for the Chippewa Construction Company, a Michigan corporation, Charles S. Abbott, its vice president, entered into a contract with petitioner on the 1st day of February, 1912, by which the Chippewa Construction Company agreed to purchase from petitioner his milling and electrical plants in the city of Greenville, for the sum of $97,000. One thousand dollars was paid down. Monthly payments were to follow, and the whole sum was to be paid by February 1, 1913, and the Chippewa Construction Company was to have possession of the plants when the monthly payments aggregated $20,000, or when an existing mortgage thereon for $28,000 was paid. Default was made in the monthly payments, and none were ever made. On August 2d of the same year, another contract was executed between the parties, by which petitioner agreed to furnish electrical current to the Greenville Gas, Electric Light, Power & Fuel Company of Greenville (a portion of whose lines had been destroyed), which company had also been purchased by the Chippewa Construction Company upon contract. This latter contract was to continue in force until a combination of the plants was made, or the lines of the other company reconstructed. It is petitioner's claim that he was induced to make this second contract upon the assurances that the delinquent payments then due would thereafter be promptly made, and the vendee's delinquency was excused by the statement that there had been dissension among the members of the board, but these were in a way to be straightened out, and when they were, the payments would be made. These assurances were not made good, and subsequently, and on the 29th day of October, 1912, the Chippewa Construction Company went into the hands of a receiver. On February 1, 1913, the time for making the final payments, no payment had been made upon the first-named contract,

save the $1,000 paid when the contract was executed. Petitioner at once served a notice on the receiver, in which he exercised his right under the terms of the contract, and declared both contracts forfeited. Soon after this declaration of forfeiture, and on the 27th day of February, 1913, an *ex parte* injunction was allowed by the Wayne circuit court upon the application of the receiver, the Detroit Trust Company, restraining petitioner from severing his service wire from the Greenville Gas, Electric Light, Power & Fuel Company's lines. In May, 1913, petitioner filed his petition in the receivership proceeding, praying, among other things, that the aforesaid contracts be declared forfeited, and the injunction dissolved. This the chancellor refused to do, and hence this appeal.

1. It is argued in defense of the action of the trial court in refusing relief, that petitioner failed to comply with the provisions of (section 1) Act No. 200, Pub. Acts 1911, providing a method of forfeiting land contracts. It is conceded by petitioner that he did not comply with the terms of that act in forfeiting the contract, because he brought himself within its proviso. The act provides a mode for forfeiting land contracts without the aid of court proceedings, and contains the following proviso:

"*Provided further,* that this act shall not be held to debar the vendor or his proper representatives or assigns from enforcing the forfeiture of said contract through proper procedure in a court of chancery, nor to debar proceedings to recover possession of said premises in any manner now authorized by law or through summary proceedings, provided said contract by its terms so allows."

A fair construction of this act seems to be that the legislature undertook to and did provide an additional method, whereby land contracts could be forfeited without the aid and expense of a court proceeding.

There is nothing in the act which supports the view that the act is mandatory or exclusive with respect to the added remedy, but there is express language in the proviso which leads to the conclusion that it was intended to be elective with the vendor. In other words, the act in effect says to the holder of a defaulted land contract, if you desire to forfeit your contract, here is an additional method of doing so, by which you can accomplish it without the aid of court proceedings. Or, if you choose, you may pursue one of the existing remedies. Petitioner chose one of the existing remedies, and we think he was well within his rights in so doing, inasmuch as the contract in question makes provision for declaring a forfeiture of the contract by giving notice thereof.

2. Should the contracts be forfeited? The consideration of this question has been rendered less difficult, by reason of the agreement of counsel:

(*a*) It is agreed that the Chippewa Construction Company was, at the date of the hearing, in default on its payments of contract No. 1;

(*b*) that contract No. 2 is subject to the terms of contract No. 1;

(*c*) that contracts 1 and 2 should be construed together;

(*d*) that notice of forfeiture of the contract was duly served on the receiver;

(*e*) that a forfeiture of contract No. "1" forfeits contract No. "2."

It is apparent from the record that neither in this proceeding, nor at any other time, has the vendee in the contract, or its receiver, tendered payment in compliance with the contract, nor is there any likelihood expressed that it can, or ever will, make payment thereon. This state of affairs, considered in connection with the concessions of counsel, leads us to the

view that the contracts had been declared forfeited, and the court should have so recognized it.

But counsel for the receiver argue, in substance, that to maintain the *status quo* will not prejudice the rights of the petitioner, but will materially assist the receiver in disposing of the assets of the vendee on a sale thereof. The petitioner executed these contracts with the Chippewa Construction Company, and the record shows that he has not only complied with all the terms of the contract which were incumbent upon him to perform, but that he has borne with the defaults of the vendee longer than he contracted to. When the time finally arrived for payment in full, no payment was tendered. There is no showing that the receiver is in any position financially to tender it, or, if it can, that it will. The inferences are very strong that the vendee is insolvent. Unless we are entirely to overlook the petitioner's rights under the contract for the purpose of augmenting the value of the assets of the vendee upon a sale thereof, some relief must be granted him.

It is urged that equity abhors forfeitures, and that equity will not enforce a forfeiture, and petitioner is charged with being unwilling to do equity, although he is asking it. This court not infrequently goes beyond the strict terms of the contract to enforce equities between parties, and an illustration of that is the recent case of *Northern Michigan Building, etc., Ass'n* v. *Fors, ante,* 69 (155 N. W. 736). If the receiver, in answer to the petition, were tendering payment to make good the default at this time, or if it were able to express some hope and ability to make payment in the near future, this court might see fit to still grant the defendant the privilege of making payment upon the contract, but such is not the case. Defendant is simply asking that the contract be not forfeited, because its equity therein will assist in making a sale of

its other assets. The statement of counsel that a court of equity will not enforce a forfeiture under any conditions is sufficiently answered by the recent case of *Donnelly* v. *Lyons,* 173 Mich. 515 (139 N. W. 246).

We are of the opinion that under the state of affairs presented by this record, the order of the trial court should be reversed, and one entered, declaring a forfeiture of both contracts and dissolving the injunction, with costs to the petitioner.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.