PARDEIKE *v.* FARGO.

1. SPECIFIC PERFORMANCE—ORAL CONTRACT—DOWN PAYMENT.

Payment of $1,000 down on 100-acre farm in Wayne county, an asset in an estate then being probated, *held*, to have been on an offer to purchase and not part payment on an oral contract of purchase, as claimed by plaintiff in suit for specific performance.

2. EXECUTORS AND ADMINISTRATORS—SALE OF REAL ESTATE—LICENSE BY PROBATE COURT—CONSIDERATION.

An administratrix may not make a valid agreement to sell lands of the estate without license, issued by the probate court complying with the statutory probate court proceedings, which includes consideration shown by appraisers to be fair to the estate and she would be bound to accept a higher offer if one were made (CL 1948, § 709.2 *et seq.*).

3. DESCENT AND DISTRIBUTION—TITLE TO REALTY.

Title to real estate passes to and vests in the heirs of the owner, not to the personal representatives.

4. ESTATES OF DECEDENTS—LICENSE TO SELL REAL ESTATE—BOND.

A license to sell property in the estate of a decedent, granted by the probate court, never became effective, where the licensee did not file the required bond (CL 1948, § 709.2 *et seq.*).

5. SPECIFIC PERFORMANCE—CONTRACT—EVIDENCE—FARMS—ESTATES OF DECEDENTS.

No contract of sale of farm, which constituted an asset of an estate then being probated, either by defendant widow individually or as administratrix of her husband's estate is *held*, to have existed under record presented in suit for specific performance, where it is shown, among other things, that no guardian *ad litem* had been appointed to protect the interests of the 3 minor children who had an interest in the estate.

Appeal from Wayne; Murphy (George B.), J. Submitted October 7, 1955. (Docket No. 55, Calendar No. 46,621.) Decided December 28, 1955. Rehearing denied March 1, 1956.

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur, Statute of Frauds § 428.
[2, 4] 21 Am Jur, Executors and Administrators § 718.
[3] 21 Am Jur, Executors and Administrators § 289.
[5] 49 Am Jur, Specific Performance § 15.

Bill by Arnold Pardeike against Margaret R. Fargo, individually and as administratrix of the estate of Ernest S. Fargo, deceased, for specific performance of oral contract to sell farm. Decree for plaintiff. Defendant appeals. Reversed and decree ordered entered dismissing suit.

*Harold H. Emmons, Jr.,* for plaintiff.

*Peter P. Gilbert* and *Alton P. Shirley (John Sklar,* of counsel), for defendant.

REID, J. Plaintiff Arnold Pardeike sues Margaret R. Fargo, individually, in chancery for specific performance of an alleged oral agreement by defendant Margaret R. Fargo for the sale to plaintiff of a 100-acre farm in Sumpter township, Wayne county, Michigan, and also joined as defendant, said Margaret R. Fargo as administratrix of the estate of her deceased husband Ernest S. Fargo, who owned the said farm at the time of his death. From a decree for plaintiff, defendant individually, and as administratrix of the estate of her deceased husband, appeals, claiming that no such agreement had been entered into. Defendant's decedent, Ernest S. Fargo, died April 17, 1948, leaving defendant Margaret his widow, and 3 children. The youngest was 2 months old and 1 child 3 years and 1 under 5.

The decedent had owned the farm in question since 1937, the title being in decedent alone.

The mother of defendant, who died in January, 1948, was the owner of a 60-acre farm located near the farm in question. Defendant was also appointed administratrix of her mother's estate. Her half brother, then living in South America, came to this country in 1951 on a brief visit and desired their mother's farm to be sold so that he could get his

share. Neither defendant's mother nor her husband, decedent Ernest S. Fargo, left any will.

In the summer of 1951, the mother's 60-acre farm was sold by defendant and she paid her brother his share. Defendant testified that before that sale, and during defendant's brother's stay in 1951, she thought of plaintiff Pardeike as being a possible buyer of the 60 acres, so she had her brother go with her and offer to sell the two farms to plaintiff Pardeike and his father. Plaintiff's father died after negotiations for purchase of the 100-acre farm were broken off.

Defendant testified that her half brother was anxious to get a quick sale for all that he was interested in, and that she did not think it ought to be sold for less than $15,000; that it was her brother that suggested to Pardeike, Sr., that he put in a bid at $10,000.

Plaintiff Pardeike claims that defendant represented to him that she owned the farm in question and claims that defendant came to an oral agreement with plaintiff to sell the farm to plaintiff for $10,000. Plaintiff further claims that he offered to defendant $1,000 as a down payment on the oral contract, and that defendant instructed plaintiff and his father to take a down payment of $1,000 to the office of her attorney, Mr. Riggs; that plaintiff accordingly left the $1,000 in the office of Mr. Riggs with Mr. Riggs' clerk. Neither Mr. Riggs nor defendant was in the office of Riggs when this payment was left with Mr. Riggs' clerk. Plaintiff claims that later defendant upon different occasions told plaintiff that the farm was his, or to be his.

Plaintiff knew that Mr. Fargo had died and that the property had been rented to the tenants before Mr. Fargo's death. Pardeike, Sr., the father of plaintiff, owned a farm that was near to the farm in question and had been a mail carrier serving in

that locality for several years. Plaintiff refers to his father's residence as "home" during the negotiations for sale of the farm in question. Plaintiff admits that Mrs. Fargo said something to him about the authority to sell but he claims that it was a license for her to operate as a real-estate broker instead of a license by the probate court to sell this 100-acre farm.

Plaintiff went ahead on his own initiative and expended some moneys on the property, the farm in question, paid an insurance premium of $11.55 on the building, and put some repairs on the roof of the barn. Plaintiff claims he purchased some steel roofing but it was never brought to the farm, and also, that he put in a crop in a field. Defendant, however, testified that she knew of none of these things until after they had been done. It is certain from the testimony that the tenants and plaintiff Pardeike got into an altercation over some of these matters, when the tenants discovered what plaintiff Pardeike was doing.

Defendant Margaret R. Fargo contemplated going back from the residence of the parties on Outer Drive in Detroit to live on the 100-acre farm in question where she and her husband had lived before renting it to tenants and before moving to the Outer Drive residence. Defendant had done nearly all the work on the farm herself while they were living on the farm. Her husband, the deceased, had worked as a mechanic and after his death she had very little income. She testified she wanted more than $10,000 and that she thought she should have $15,000 if she sold but was uncertain whether it was desirable for her to sell.

In view of all the circumstances shown in this case, it is decidedly more probable that, as she testified, defendant told plaintiff that she would need approval of the probate court to sell her husband's farm than

that, as testified by him, she told plaintiff a false-hood that the farm was her own property. It would have been easy for the neighbor, the plaintiff, to have found out the truth that the farm had been for some 3 or 4 years in probate court listed and recognized as solely owned by the estate and that defendant was administratrix of the estate and not the owner, except as to her third interest; so that in all human probability she would have realized that she would be detected if she falsified about the ownership. If defendant had been so eager to sell to plaintiff for $10,000 as plaintiff asserts, she would speedily have gone about the matters necessary to the closing of the deal. For over a year the sum of $1,000 remained in the hands of attorney Riggs for her, which sum, as she testified, was part of a "bid."

We find that the payment of $1,000 down was on an offer to purchase and not part payment on an oral contract of purchase, as claimed by plaintiff.

The trial court by its decree determined that plaintiff was entitled to specific performance of an oral agreement of purchase by plaintiff and decreed that defendant transfer to him by proper deed of conveyance, individually and as administratrix, "under the statutes in such case made and provided," the property involved in this lawsuit, and vest in plaintiff a good and merchantable title.

As administratrix, defendant could not make a valid agreement to sell lands of the estate without license issued by the probate court complying with the statutory probate court proceedings which includes consideration shown by appraisers to be fair to the estate; and even as administratrix she would be bound to accept a higher offer if one were made.

Upon the death of the owner of real estate, title passes to and vests in the heirs, not to the personal representatives. *Windoes* v. *Colwell*, 247 Mich. 372. See, also, *Webber* v. *Detroit Fidelity & Surety Co.*,

263 Mich 144; *Burnham* v. *Kelley,* 299 Mich 452 (syllabus 11).

For proceedings as to sale under probate court jurisdiction, see CL 1948, § 709.2 *et seq.* (Stat Ann 1943 Rev and Stat Ann 1953 Cum Supp § 27.3178 [462] *et seq*).

The trial court disregarded the fact that its decree was unjust to the interests of the children, the 3 minor heirs too young to protect their own interests and for whom no guardian *ad litem* had been appointed.

Upon the attorney Riggs being informed that plaintiff Pardeike considered the $1,000 payment as a payment on an oral contract for the purchase of the premises, as property owned by defendant, he (attorney Riggs) refunded to plaintiff the $1,000 payment. Proceedings were then taken by the administratrix defendant and under the direction of attorney Riggs in probate court for license to sell. A former license had been ordered by probate court in 1948 to sell for $10,000, but defendant administratrix did not file the required bond and that order for license never became effective. In the proceeding later taken June 17, 1952, to obtain license to sell the farm, the appraisers in probate court set the value at $15,000 and the license to sell was issued in that amount. In fact, an offer of more than $16,-000 was filed with the probate court during the pendency of this lawsuit. The letter of attorney Riggs to plaintiff further stated that if defendant desired to purchase the premises it would be necessary to meet the amount stipulated in the license to sell.

We are convinced that no contract for the sale of the premises, either by defendant individually or as administratrix, to plaintiff ever existed.

The decree appealed from is reversed. A decree will be entered in this Court, finding that the plain-

tiff is not entitled to any relief, and decreeing the dismissal of the suit.  Costs to defendant.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.