GRUSKIN v FISHER

1. COMMON LAW—CONSTITUTIONAL LAW.

   The common law is adopted as part of our jurisprudence and remains in force until changed, amended or repealed (Const 1963, art 3, § 7).

2. STATUTES—CONSTRUCTION—PRESUMPTIONS—LEGISLATURE.

   No statute is to be construed as altering the common law further than its words import; a statute may take away a common-law right, but there is a presumption that the Legislature has no such purpose.

3. STATUTES—CONSTRUCTION—COMMON LAW.

   A statute will not be extended by implication to abrogate the established rules of common law.

4. VENDOR AND PURCHASER—LAND CONTRACT—FORFEITURE—ELECTION OF REMEDIES.

   The vendor, after a vendee's default in a land contract containing the usual forfeiture clause, may treat the contract as continuing in force and sue at law upon it for payments due, or bring an action in equity for foreclosure of the lien and for a deficiency decree, or he may declare it forfeited.

5. VENDOR AND PURCHASER—LAND CONTRACT—DEFAULT—REMEDIES.

   Remedies available to a vendor, after default of a vendee on land contract, include actions for breach of contract, ejectment, eviction, foreclosure, rescission, self-help, peaceful repossession, suit for purchase money, specific performance, summary proceedings and action to quiet title.

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law § 49.

[2, 3, 7] 73 Am Jur 2d, Statutes §§ 184, 185.

[4–8] 77 Am Jur 2d, Vendor and Purchaser § 404 *et seq.*

[8] 39 Am Jur 2d, Health § 20.

[9] 31 Am Jur 2d, Executors and Administrators § 165.

6. Vendor and Purchaser—Land Contract—Forfeiture—Election of Remedies.

A vendor of land pursuant to a land contract, who has declared a forfeiture, may not subsequently seek a foreclosure and deficiency judgment in equity or sue at law for payments due under the contract.

7. Vendor and Purchaser—Summary Proceedings—Land Contract—Forfeiture—Common Law—Election of Remedies—Statutes.

A section of the act governing summary proceedings to recover possession of premises after default in payments on a land contract contains no clear and expressed legislative intention to abrogate the common-law rule that a vendor after declaring a forfeiture of a land contract may not subsequently resort to remedies which affirm the contract and seek to recover under it (MCLA 600.5750; MSA 27A.5750).

8. Vendor and Purchaser—Land Contract—Forfeiture—Health Code Violations—Surrender of Premises.

A surrender of premises by a vendee, after the vendor has declared a forfeiture of the land contract and demanded surrender of the premises untainted, is not ineffective because the property was in violation of the health code in breach of the land contract.

9. Executors and Administrators—Sale of Real Property—License—Probate Court—Statutes.

An executor must obtain a license from the probate court before he may sell real property which is a part of the probate estate (MCLA 709.2; MSA 27.3178[462]).

10. Trusts—Sale of Real Property—Title—Power of Alienation.

A conveyance by a trustee under a power of alienation in a trust deed passes good title to the grantee.

Appeal from Wayne, Michael L. Stacey, J. Submitted December 3, 1975, at Detroit. (Docket No. 22910.) Decided July 19, 1976. Leave to appeal applied for.

Complaint by Myron, Ellen, Ben, and Frances Gruskin, and John H. Volin against Irene R. and Gordon L. Fisher, co-executors of the estate of Marshal Fisher, deceased, and Charles F. Burger

for foreclosure of a land contract and a deficiency judgment. Summary judgment for plaintiffs. Defendants appeal. Reversed.

*Robert H. Golden,* for plaintiffs.

*Lieberman & Tukel, P. C.,* for defendants.

Before: J. H. GILLIS, P. J., and ALLEN and M. J. KELLY, JJ.

M. J. KELLY, J. Defendants appeal from a summary judgment entered on the plaintiffs' complaint for foreclosure of a land contract and a deficiency judgment in Wayne County Circuit Court.

On November 20, 1969, the plaintiffs as vendors and Marshal Fisher and defendant Charles Burger as vendees entered into a land contract for the sale of a multiple unit apartment building in Detroit. Before he died, Marshal Fisher transferred his interest in the land contract to the trustees of an inter vivos trust. Defendants Gordon Fisher and Irene Fisher are successor trustees of that trust and also the co-executors of Marshal Fisher's estate.

The total purchase price was $40,000, of which $35,000 remained unpaid when the payments stopped in late 1971. The building was later condemned and razed by the City of Detroit. The city has liens for back taxes and demolition expenses.

After the vendees had been in default for almost one year, the plaintiffs sent them a notice of intention to forfeit land contract. When the defendants failed to cure their default, the plaintiffs served a notice of forfeiture of land contract on September 29, 1972. That notice stated that the plaintiffs elected to:

"[D]eclare said land contract forfeited, effective in 15 days after service of this notice; and you are hereby further notified that unless the money required to be paid is paid and any other alleged material breaches of the contract are cured, that you are to yield, surrender and deliver up possession of the premises * * * .

"You are further notified that from and after the service of this notice, you will be liable for damages which the undersigned may suffer by reason of your continued possession of said premises".

In response to the notice, all three defendants executed a quit-claim deed in favor of the plaintiffs on October 19, 1972. The deed was signed by Gordon and Irene Fisher in their capacities as trustees of the trust and executors of Marshal Fisher's estate. The deed and accompanying letter were hand delivered to the plaintiffs' attorney.

By letter of October 25, 1972, the plaintiffs returned the quit-claim deed and stated as their reasons that the deed had not been delivered within the 15 days specified in the notice of forfeiture of land contract and that the defendants had failed to correct the building and health code violations as they had undertaken to do in the original contract.

On October 30, 1972, plaintiffs brought action in the circuit court for foreclosure of the land contract and a deficiency judgment against the defendants. The defendants responded with motions for accelerated judgment under GCR 1963, 116.1(5) and summary judgment under GCR 1963, 117.2(1). The argument in support of those motions was that, by declaring a forfeiture of the land contract, the plaintiffs made an election of remedies and were barred from seeking judicial foreclosure and deficiency judgment.

The trial judge denied the defendants' motions,

relying on MCLA 600.5750; MSA 27A.5750, reading that recently enacted summary proceeding statute as stating that initiation of forfeiture does not bar other alternative relief procedures *until* the land contract vendor has obtained a *judgment* for possession in district court. In the present case, since summary proceedings were never actually initiated, the court reasoned that the plaintiffs were free to abandon their forfeiture remedy and proceed instead to seek judicial foreclosure and deficiency judgment.

The plaintiffs then filed a motion for summary judgment of liability only under GCR 1963, 117.2(2) and (3). In support of their motion, the plaintiffs advanced the aforementioned MCLA 600.5750; MSA 27A.5750 and also cited a provision of the Probate Code, MCLA 709.30; MSA 27.3178(490), which they contended rendered the purported quit-claim deed signed by defendants Irene and Gordon Fisher in their fiduciary capacity invalid because they had failed to seek prior probate court approval of the transfer. The defendants also moved for summary judgment under GCR 1963, 117.3.

After hearing arguments, the trial judge entered a summary judgment in favor of the plaintiffs on liability on November 2, 1973. The defendants then filed a claim of appeal in this Court but that claim was rejected for the reasons that the proceedings below had not reached final judgment.

The plaintiffs next moved for summary judgment on damages with supporting affidavits to the effect that the property was less than worthless since the building had been torn down and liens held by the City of Detroit exceeded the value of the empty lots. Although the defendants answered that the amount of deficiency could not be deter-

mined without first attempting a foreclosure sale, they did not dispute the plaintiffs' calculations as to the amount then owing, *viz.,* $36,386.10 principal, $5,305.53 interest and $72 costs. The trial judge entered summary judgment in accord with plaintiffs' motion on January 8, 1975.

The defendants now appeal from the earlier denial of their motion for summary judgment and the order of November 2, 1973, which granted the plaintiffs' motion for summary judgment on liability. Apparently, the defendants concede that, if they owe anything at all, the mathematical computations in the second summary judgment order filed on January 8, 1975 are correct.

The main question presented in this case is whether § 5750 of the summary proceedings act, MCLA 600.5750; MSA 27A.5750, amended the long-established common law rule that a vendor's forfeiture of a defaulted land contract constituted an election of remedies which precluded him from subsequently seeking a foreclosure and deficiency judgment.

The rule was well-developed in our common law as early as 1864. *Goodspeed v Dean,* 12 Mich 352 (1864). It probably developed as an illustration of the doctrine of election of remedies, that common law rule of procedure or rule of judicial administration that resort to one remedy bars resort to an inconsistent remedy. See 25 Am Jur 2d, Election of Remedies, §§ 1, 2, pp 691–692. Thus, in *Balesh v Alcott,* 257 Mich 352, 354–355; 241 NW 216 (1932), the Court expressed the rule in election of remedy terms.

"Plaintiff had an election of remedies at the time the default occurred on the part of the assignee of the vendees. She could declare the contract forfeited and begin summary proceedings under the statute above

mentioned, or she could file a bill for the foreclosure of the contract. The one would proceed upon the theory the contract was at an end; the other upon the theory the contract was in force. She could not do both. She could not elect to declare the contract forfeited, and declare the same to be in force. She could not in one proceeding take the position it was void, and in another proceeding it was valid. She could not declare the contract out of existence in one lawsuit and in existence in another. * * * If she performed any positive and unequivocal act which indicated she treated the contract as at an end, she would be bound thereby."

Did the Legislature intend to alter the rule when it enacted the summary proceedings act, 1972 PA 120, especially § 5750 of that act? Plaintiffs argued that such a change was intended and the circuit court agreed.

We disagree.

The common law is adopted as part of our jurisprudence. It remains in force until changed, amended or repealed. Const 1963, art 3, § 7.

"The common law as well as statutes abide unless 'changed, amended or repealed.' 'Amendment' and 'repeal' refer to the legislative process. 'Change' must necessarily contemplate judicial change." *Myers v Genesee County Auditor,* 375 Mich 1, 7; 133 NW2d 190 (1965).

Legislative amendment of the common law is not lightly presumed.

"The rule has been declared by the United States Supreme Court, as follows: 'No statute is to be construed as altering the common law, further than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express.' A statute may take away a common law

right, but there is a presumption that the legislature has no such purpose.

"This rule of statutory interpretation has received wide adoption, and is employed where there is reasonable doubt whether a change in the common law which is claimed to have been made by a statute should apply to a particular situation or circumstance. If a change is to be made in the common law, therefore, the legislative purpose to do so must be clearly and plainly expressed." 3 Sutherland, Statutory Construction, § 61.01, p 41 (Sands Ed, 1974).

See also, 73 Am Jur 2d, Statutes, § 185.

Nor will statutes be extended by implication to abrogate the established rules of common law. *McKinney v Caball,* 40 Mich App 389; 198 NW2d 713 (1972), *Silver v International Paper Co,* 35 Mich App 469; 192 NW2d 535 (1971), see also, *Yount v National Bank of Jackson,* 327 Mich 342; 42 NW2d 110 (1950).

Our examination satisfies us that § 5750 of the summary proceedings act does not evince a clear and plainly expressed legislative intention to abrogate the common law rule that forfeiture of a land contract prevents subsequent resort to remedies which affirm the contract and seek to recover under it. To the contrary, § 5750 is, in most respects, merely a reiteration of established principles.

The first sentence of § 5750 is; "The remedy provided by summary proceedings is in addition to, and not exclusive of, other remedies, either legal, or statutory". That sentence merely declares what has been the law for a considerable time.

"On vendee's default in a land contract containing the usual forfeiture clause, vendor may treat the contract as continuing in force and sue at law upon it for payments due or bring action in equity for foreclosure

of the vendor's lien and deficiency decree; or he may declare it forfeited." *Chicago Boulevard Land Co v Apartment Garages,* 245 Mich 448, 450; 222 NW 697 (1929).

"Upon default made by vendees in the terms of the land contract, three actions were open to the vendor: A suit in equity to foreclose the contract, an action of ejectment, proceedings under the statute last above cited." *Balesh v Alcott, supra,* at 354.

See also, *Zaino v North Woodward Construction Co,* 355 Mich 425; 95 NW2d 33 (1959), *Mortgage & Contract Co v Sage,* 266 Mich 165; 253 NW 255 (1934), *Windmill Point Land Co v Strickland,* 264 Mich 79; 249 NW 464 (1933).

Actually, nearly a dozen remedies traditionally have been available, and some were or are still available in Michigan, to a vendor under a defaulted land contract. Those remedies include action for breach of contract, ejectment, eviction, foreclosure, rescission, self-help, peaceful repossession, suit for purchase money, specific performance, summary proceedings and action to quiet title.

Where forfeiture was chosen as the remedy, forfeiture by the vendor by some act alone was sufficient to terminate the contract. Subsequent proceedings were available to enforce rights obtained through the forfeiture, *e.g.,* summary proceedings for possession, but the contract ended when the forfeiture was declared. *Crenshaw v Granet,* 237 Mich 367; 211 NW 636 (1927). For this reason, it has been held that a vendor who had declared a forfeiture could not subsequently seek a foreclosure and deficiency judgment in equity, *Chicago Boulevard Land Co v Apartment Garages, supra, Balesh v Alcott, supra,* or sue at law for payments due under the contract, *Hayes v Kent*

*Real Estate Co,* 44 Mich App 196; 205 NW2d 52 (1972).

The first sentence of § 5750 does nothing more than reiterate existing law. As a statutory provision, it isn't even novel. A similar provision existed in 1911 in a statute providing for forfeiture of land contracts without court proceedings. 1911 PA 200, quoted in *Tower v Detroit Trust Co,* 190 Mich 670, 672; 157 NW 367 (1916), provided in part:

" '*Provided further,* that this act shall not be held to debar the vendor or his proper representatives or assigns from enforcing the forfeiture of said contract through proper procedure in a court of chancery, nor to debar proceedings to recover possession of said premises in any manner now authorized by law or through summary proceedings, provided such contract by its terms so allows.' "

Construing that provision, the Court in *Tower v Detroit Trust Co, supra,* said, in language appropriate to our discussion of optional remedies available to vendors:

"A fair construction of this act seems to be that the legislature undertook to and did provide an additional method, whereby land contracts could be forfeited without the aid and expense of a court proceeding. There is nothing in the act which supports the view that the act is mandatory or exclusive with respect to the added remedy, but there is express language in the proviso which leads to the conclusion that it was intended to be elective with the vendor. In other words, the act in effect says to the holder of a defaulted land contract, if you desire to forfeit your contract, here is an additional method of doing so, by which you can accomplish it without the aid of court proceedings. Or, if you choose, you may pursue one of the existing remedies. Petitioner chose one of the existing remedies, and we think he was

well within his rights in doing so, inasmuch as the contract in question makes provision for declaring a forfeiture of the contract by giving notice thereof." 190 Mich at 672–673.

We conclude that the first sentence of § 5750 merely repeats existing law by preserving a vendor's traditional choice of remedies to redress a defaulted land contract. Some of those remedies are equitable, some legal, some statutory. Some are concurrent; none is exclusive. Some are inconsistent, some consistent. The point is that traditionally and under § 5750 of the act the vendor has a choice of remedies. The first sentence of § 5750 says nothing about the consequences of exercise of that choice.

The second sentence of § 5750 does not change that result. That sentence reads:

"A judgment for possession under this chapter does not merge or bar any other claim for relief, except that a judgment for possession after forfeiture of an executory contract for the purchase of premises shall merge and bar any claim for money payments due or in arrears under the contract at the time of trial and that a judgment for possession after forfeiture of such an executory contract which results in the issuance of a writ of restitution shall also bar any claim for money payments which would have become due under the contract subsequent to the time of issuance of the writ."

It is this sentence which plaintiffs and the lower court found to abrogate the common law rule. However, they overlook an important difference in language in the second sentence. The first sentence of § 5750 refers to *remedies.* The second sentence, however, refers to *claims for relief,* that is, the relief which can be granted in an action for summary possession under the act. The first sentence

of the section reiterates the vendor's traditional choice of remedies. However, once he chooses the remedy of summary possession, the second sentence of § 5750 refers to what relief he may obtain under such a proceeding. In an action for summary possession, under § 5739 of the act, a vendor may join claims for, among other things, "money judgment for damages attributable to wrongful entry, detainer or possession, for breach of the lease or contract under which the premises were held or for waste or malicious destruction of the premises". In short, then, in an action for summary possession under the new act, a vendor may now join a claim for money damages. He could not do so before. *Hayes v Kent Real Estate Co,* 44 Mich App 196; 205 NW2d 52 (1972). It is at this point that the second sentence of § 5750 comes into play. When a vendor receives a judgment for possession or a judgment and a writ of restitution, that judgment or judgment and writ do not merge or bar any other *claim for relief* in the action (such as claims for money damages enumerated in § 5739), except claims "for money payments due or in arrears under the contract at the time of trial" or "money payments which would have become due under the contract subsequent to the time of issuance of the writ".

Again, that bar is nothing more than a repetition of the rule that forfeiture and possession of the premises, disavowing the contract, precludes a claim for amounts due under the contract. It merely reiterates the rule under the former summary proceedings acts that a money judgment for the amount due under the contract could not be awarded. See former MCLA 600.5646; MSA 27A.5646, *Union Guardian Trust Co v Kowalsky,* 267 Mich 110; 255 NW 171 (1934), *Gregorian*

*Building Co v Galvin,* 268 Mich 273; 256 NW 437 (1934).

Although § 5741 of the new act allows the judgment to include the amount due or in arrears under the contract, it does so, not by way of recovery by the vendor, but as a means of notice to vendee of the amount required to be paid in order to avoid the issuance of a writ of restitution which, if issued, forecloses any right of redemption, § 5744(7).

Unfortunately, plaintiffs and the lower court read the second sentence of § 5750 as beginning, "A judgment for possession under this chapter does not merge or bar any other [remedy], except that a judgment for possession after forfeiture", etc. We think the Legislature's choice of words was advised. In the first sentence of § 5750, it referred to remedies in general. In the second sentence of § 5750, it spoke of "claim for relief" in a summary proceedings action when that remedy is chosen by the vendor. Thus, it is an improper interpretation of § 5750 to say that resort to summary proceedings does not bar resort to any other inconsistent remedy or, more specifically to the facts of this case, that after forfeiture of a defaulted land contract, the vendor may resort to other remedies at any time prior to taking judgment in summary proceedings or judgment and a writ of restitution.

In light of our interpretation, the common law rule remains that a declaration of forfeiture of a land contract disavows the contract and precludes the vendor from subsequently resorting to an action for foreclosure or some other inconsistent remedy which affirms the existence of the contract. We perceive in § 5750 no clear and expressed legislative intention to abrogate the common law rule.

Appellees argue that a change in the law must have been intended by the Legislature in enacting the new summary proceedings statute because § 5728(1) requires service of notice of forfeiture upon the vendee prior to commencement of summary proceedings. Under former practice, appellees say, such a notice of forfeiture would have raised a bar to other remedies. But, by requiring notice of forfeiture as a condition to suit and by providing in § 5750 that no bar arises until judgment, appellees conclude, the Legislature abrogated the rule that forfeiture bars other actions.

That analysis is rejected. First of all, as discussed previously, the second sentence of § 5750 preserves other *claims for relief* within the summary proceedings remedy, not other *remedies*. Secondly, § 5728(1), in requiring service of notice of forfeiture as a condition to summary proceedings, is merely a restatement of past practice; it is not a new requirement. See *Sriro v Dunn,* 265 Mich 112; 251 NW 370 (1933), *Mervez v Petchesky,* 259 Mich 507; 244 NW 144 (1932), *Malys v W C Hood Realty Corp,* 229 Mich 110; 200 NW 943 (1924), *Miner v Dickey,* 140 Mich 518; 103 NW 855 (1905), *Corning v Loomis,* 111 Mich 23; 69 NW 85 (1896).

The result of this analysis is that the trial court erred in its interpretation of § 5750. Plaintiffs' voluntary forfeiture of the land contract disavowed the contract. Having elected the remedy of forfeiture and claim for possession, plaintiffs are barred from pursuing an inconsistent remedy which necessarily affirms the contract and seeks damages under it.

We next consider the question whether the vendees succeeded in their attempt to deliver possession and title to the vendors. Plaintiffs argue that the attempt failed for two reasons. First, that

the notice of forfeiture demanded the defendants either cure their default or surrender untainted possession of the premises. The right to possession allegedly surrendered by quit-claim deed was subject to numerous health code violation citations by the City of Detroit. Therefore the quit-claim deed did not satisfy the demand for possession in the notice of forfeiture.

Plaintiffs cite no authority for this argument. We find it to be without merit. It would seem illogical to allow the plaintiffs to declare forfeiture because the defendants were in breach of the provisions of the contract, demand surrender of possession and then on the other hand say that possession and title could not be successfully surrendered unless there was no breach of the contract as to one or more of the covenants (health code violations).

Finally plaintiffs argue that, since Irene and Gordon Fisher signed the quit-claim deed as executors of Marshal Fisher's estate and trustees of his trust, the purported quit-claim deed had no legal effect because they failed to secure prior court approval for its execution. MCLA 709.2; MSA 27.3178(462) requires an executor to obtain a license from the probate court before he may sell real property which is a part of the probate estate. *Pardeike v Fargo,* 344 Mich 518; 73 NW2d 924 (1955).

But Irene and Gordon Fisher signed as trustees of an inter vivos trust; thus they succeeded in delivering possession and title and the right to possession to the vendors. A conveyance under the power of alienation in a trust deed passes good title to the grantee. *Thatcher v St Andrews Church,* 37 Mich 264 (1877).

According to the affidavit of Gordon Fisher and

exhibits produced in the trial court, the real estate which is the subject matter of this action was transferred by Marshal Fisher and Irene Fisher, his wife, to Marshal Fisher as trustee under a trust agreement dated April 20, 1971, by quit-claim deed dated April 26, 1971, and recorded with the Wayne County Register of Deeds on May 18, 1971. Irene and Gordon Fisher are successor trustees of that trust. The trust instrument gave the trustees the power, *inter alia,* to dispose of all of the trust estate. Thus the trust gave them the power to pass title to the property. *Thatcher v St Andrew's Church, supra.* MCLA 709.4; MSA 27.3178(464), cited by the plaintiffs, is not applicable here because the probate court did not have jurisdiction of the trust.

The defaulting vendees successfully surrendered title and possession of the property in response to the notice of forfeiture, and plaintiffs' foreclosure action is barred.

Judgment reversed. Costs to appellants.