*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF ALGER COUNTY TREASURER FOR FORECLOSURE.

---

ALGER COUNTY TREASURER,

        Petitioner-Appellee,

v

JOHANNA MCGEE, Personal Representative of ESTATE OF JACQUELINE MCGEE,

        Claimant-Appellant.

UNPUBLISHED
September 12, 2024

No. 363803
Alger Circuit Court
LC No. 2020-008018-CZ

---

*In re* PETITION OF IRON COUNTY TREASURER FOR FORECLOSURE.

---

IRON COUNTY TREASURER,

        Petitioner-Appellee,

v

LILLIAN JOSEPH,

        Claimant-Appellant.

No. 363804
Iron Circuit Court
LC No. 20-006007-CZ

---

Before: GADOLA, C.J., and PATEL and YOUNG, JJ.

PER CURIAM.

Two consolidated cases are before this Court presenting similar issues with MCL 211.78t, the Legislative response to the Michigan Supreme Court decision in *Rafaeli, LLC v Oakland Co*,

505 Mich 429, 484; 952 NW2d 434 (2020). Both the Estate of Johanna McGee (hereinafter "the Estate") and Lillian Joseph (hereinafter "Joseph") are represented by the same counsel. In one case, the Estate appeals by delayed leave granted[1] the circuit court order denying the Estate's motion to compel petitioner, the Alger County Treasurer, to disburse to the Estate proceeds from the tax-foreclosure sale in excess of the tax delinquency, penalties, interest, and fees owed on the decedent's property. On appeal, the Estate challenges the constitutionality of MCL 211.78t, contends that MCL 600.5852(1) applies to toll the July 1 deadline in MCL 211.78t(2), and argues that restitution is required for petitioner's unjust enrichment.

In the other case, Joseph appeals by delayed leave granted,[2] the trial court's order denying her motion to distribute the proceeds remaining from the tax-foreclosure sale of her property that exceeded the amount that she owed in taxes, interest, penalties, and fees (collectively, "tax debt"). On appeal, Joseph raises similar constitutional challenges to MCL 211.78t, contending that the statute is not the exclusive means of recovering surplus proceeds after a tax-foreclosure sale and urges the imposition of a constructive trust to prevent petitioner's unjust enrichment. Joseph raises distinct issues with respect to notice and her near-miss attempt to adhere to the notice provision.

On the basis of this Court's published opinions in *In re Barry Co Treasurer for Foreclosure*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 362316), and *In re Muskegon Co Treasurer for Foreclosure*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 363764), we affirm the circuit court's orders in both cases.

## I.  SHARED FACTUAL BACKGROUND

In 2020, the Michigan Supreme Court held that former owners of properties sold at tax-foreclosure sales for more than what was owed in taxes, interests, penalties, and fees had "a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties." *Rafaeli*, 505 Mich at 484. This right continued to exist after fee simple title to the properties vested with the foreclosing governmental unit (FGU). The FGU's "retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of [former owners'] properties under Article 10, § 2 of [Const 1963]," and the former owners were entitled to just compensation in the form of the return of the surplus proceeds. *Id*. at 484-485.

In response to *Rafaeli*, our Legislature passed 2020 PA 255 and 2020 PA 256, which were given immediate effect on December 22, 2020. 2020 PA 256 added MCL 211.78t to the General Property Tax Act (GPTA), MCL 211.1 *et seq*. That statute provides the means for foreclosed property owners to claim and receive any applicable surplus from the tax-foreclosure sales of their former properties. A subsection of that statute, § 78t(2), requires property owners whose homes were sold or transferred after July 17, 2020, the date the *Rafaeli* decision was issued, and who

---

[1] *In re Petition of Alger Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered June 20, 2023 (Docket No. 363803).

[2] *In re Petition of Iron Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered June 20, 2023 (Docket No.363804).

intend to claim any surplus proceeds from the sale or transfer, to notify the FGU of their intention by completing and submitting a single-page form, i.e., Form 5743,[3] by the July 1 immediately following the effective date of the foreclosure of their properties. In the January immediately following the sale or transfer of foreclosed properties, the FGU notifies the claimants, among other things, whether there is a surplus in proceeds and tells them that they may file a motion in the circuit court in the foreclosure proceeding to recover any remaining proceeds payable to them. MCL 211.78t(3)(k).

## A. FACTUAL BACKGROUND SPECIFIC TO THE ESTATE CASE

Jacqueline McGee owned real property in Alger County and fell behind on her 2018 property taxes. McGee died on February 7, 2021. Ten days later, petitioner, acting as the FGU for the county, obtained a judgment of foreclosure against McGee's property, effective on March 31, 2021. The property sold at auction for $38,250. Subtracting from this amount the delinquent taxes, interest, penalties, and fees, and a $1,912.50 sales commission, left about $32,737.71 in remaining proceeds.[4] The Estate filed Form 5743 on February 25, 2022, and moved for disbursement of the remaining proceeds on May 20, 2022. In a brief filed in support of its motion, the Estate raised a number of constitutional arguments against enforcement of the July 1 deadline in § 78t(2); asserted that application of the wrongful death saving provision, MCL 600.5852, gave the Estate's personal representative two years from the issuance of letters of authority to bring an action to recover remaining proceeds; and contended that the 5% sales commission was an unconstitutional taking.

As it pertains to the instant appeal, petitioner opposed the motion on the ground that the Estate's notice of intention (Form 5743) was not timely under MCL 211.78t(2). In a brief in support of its response, petitioner argued in opposition to the Estate's constitutional arguments; contended that MCL 600.5852 did not apply because the Legislature provided an explicit exception to the filing deadlines in § 78t in § 78*l*(1), which gives a claimant who did not receive due process before the foreclosure two years to file a claim; and asserted that the Estate had no basis for claiming that the 5% commission was an unconstitutional taking.

After a hearing on the Estate's motion for disbursement, at which the parties argued consistently with their written briefs, the circuit court issued a written order denying the Estate's motion. The circuit court declined to rule on the constitutional issues and adopted petitioner's reasoning for rejecting the application of the death-saving provision. The Estate now appeals by delayed leave granted.

---

[3] Michigan Department of Treasury, *Notice of Intention to Claim Interest in Foreclosure Sales Proceeds*, *Form 5743* (Feb 2021).

[4] The parties differ about the exact amount of proceeds remaining, but this difference is not relevant to the instant appeal.

## B. FACTUAL BACKGROUND SPECIFIC TO JOSEPH CASE

Lillian Joseph owned real property in Iron County and fell behind on her property taxes. Petitioner, acting as the FGU, foreclosed her property, effective March 31, 2021. The judgment of foreclosure explained that any person with a legal interest in the property immediately before the effective date of foreclosure could "seek recognition of its interest in any remaining proceeds as that term is defined in MCL 211.78t(12)(*b*) by using a form prescribed by the Michigan Treasury Department to so notify **Petitioner**." Among other things, the judgment of foreclosure explained that the notice had to be "made by personal service acknowledged by **Petitioner** or by certified mail, return receipt requested . . . by the July 1 immediately following the effective date" of the judgment of foreclosure. The trial court ordered petitioner to send the judgment of foreclosure to Joseph's last known addresses by first-class mail within 10 days of entry of the judgment. Joseph has not indicated that she did not receive this mailing.

After foreclosure became effective, petitioner sent Joseph a notice of foreclosure that provided the same information about how to claim any proceeds that remained after the tax-foreclosure sale and the satisfaction of Joseph's tax debt. The notice of foreclosure provided petitioner's mailing address, including its suite number. Joseph did not inform petitioner of her intention to claim any remaining proceeds by submitting Form 5743 to petitioner by July 1, 2021. Joseph sent Form 5743 by Priority Mail Express® on June 29, 2021, but petitioner did not actually receive it until July 2. The property sold at auction for $27,500. After Joseph's tax debt and petitioner's 5% sales commission were deducted from the sale proceeds, about $21,810 remained.

Joseph moved for an order compelling petitioner to disburse the remaining proceeds. She argued that she filed Form 5743 by July 1, 2021, using the United States Postal Service's Priority Mail Express® shipping option. She also argued, among other things, that she had substantially complied with the procedural requirements in MCL 211.78t, that the statute was unconstitutional, that the statute was not the exclusive means of recovering proceeds remaining from the tax-foreclosure sale, and that she had a cognizable constructive-trust claim. Petitioner opposed the motion, primarily on grounds that the Legislature clearly articulated its intent that MCL 211.78t provided the exclusive mechanism for Joseph to recover surplus proceeds and that Joseph had not complied with the July 1 notice deadline in § 78t(2).

During oral argument on Joseph's motion to disburse, petitioner called Iron County Treasurer, Melanie Camps, to testify about receiving Joseph's Form 5743. Camps testified that there were more than 20 office suites in the courthouse and the courthouse annex, and that each suite had its own, locked mailbox that could not be accessed by any other office. Petitioner's office was in Suite 12. Mail that lacked a suite number was put into a locked "miscellaneous" mailbox and did not reach its destination until a courthouse employee unlocked the miscellaneous mailbox and sorted the mail into the correct locked mailboxes. For misdelivered mail, e.g., mail that should have gone to Suite 12 but went to Suite 10, each suite had a wooden shelf and the suite that received the misdelivered mail could put the mail on the correct suite's shelf. Camps said that her office usually checked the mail four or five times a day on July 1; she found the envelope with Joseph's notice on her wooden shelf on July 2. Petitioner admitted into evidence Joseph's Priority Mail Express® envelope, showing that she had omitted petitioner's suite number from the address.

The trial court ultimately determined that Joseph's notification was untimely filed, denied her motion to disburse, denied her request for a constructive trust, and determined that the substantial-compliance exception was inapplicable. Joseph now appeals by delayed leave granted.

## II. LEGAL ANALYSIS

On appeal, Joseph and the Estate assert that MCL 211.78t is not the exclusive means of recovering surplus proceeds and that if it is, then the statute results in a taking without just compensation and violates due-process protections, and the July 1 deadline in § 78t(2) should not be enforced because it results in harsh and unreasonable consequences. Both the Estate and Joseph argue the imposition of a constructive trust to prevent petitioners' unjust enrichment is warranted. The Estate separately argues that MCL 600.5852 applies to toll the July 1 deadline for filing the notice of intent required by MCL 211.78t.

We review de novo questions of constitutional law. See *Bonner v Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014). "Statutes are presumed to be constitutional, and [this Court has] a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Calhoun Co v Battle Creek*, 338 Mich App 736, 743; 980 NW2d 561 (2021). Similarly, we review de novo whether the circuit court interpreted and applied the relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). "Whether a specific party has been unjustly enriched is generally a question of fact . . . [but] whether a claim for unjust enrichment can be maintained is a question of law[.]" *Jackson v Southfield Neighborhood Revitalization Initiative*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361397); slip op at 27-28 (quotation marks and citation omitted; alterations in original).

### A. STATUTORY CLAIMS

### 1. EXCLUSIVITY OF MCL 211.78t

Joseph and the Estate acknowledge on appeal that this Court held in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 5, that the Legislature intended MCL 211.78t as the exclusive mechanism for claiming and recovering remaining proceeds and rejected arguments to the contrary that are identical with those advanced by the Estate in the present appeal. Joseph and the Estate concede that this Court is bound by that holding, see MCR 7.215(J)(1), but asks this Court to now find otherwise and to issue a conflicting opinion, see MCR 7.215(J)(2). Both parties, by way of the same counsel, advance the same arguments that this Court has already rejected, does not identify any errors in this Court's reasoning on the issue in *Muskegon Treasurer*, and does not cite any authority contrary to this Court's conclusion regarding the exclusivity of MCL 211.78t(2). Under these circumstances, we have no reason to reject *Muskegon Treasurer* and to issue a conflicting opinion.

### 2. SUBSTANTIAL COMPLIANCE

Unique to Joseph is her near-miss attempt at providing notice in compliance with MCL 211.78t. Joseph contends that she timely informed petitioner of her intention to claim an interest in surplus proceeds because her Form 5743 was in petitioner's mailroom by July 1, 2021, and that, even if her notice was not made in strict compliance with MCL 211.78t(2), she

substantially complied with the statute's requirements. Joseph asserts, therefore, that the trial court erred by not applying the substantial-compliance exception. We disagree.

We review de novo whether the circuit court properly interpreted and applied the relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). It is a cardinal rule of statutory interpretation that a "clear and unambiguous statute warrants no further interpretation and requires full compliance with its provisions as written." *Northern Concrete Pipe, Inc v Sinacola Cos-Midwest, Inc*, 461 Mich 316, 320; 603 NW2d 257 (1999).

MCL 211.78t(2) states, in relevant part, that for a property sold or transferred after July 17, 2020,

> by the July 1 immediately following the effective date of the foreclosure of property, a claimant seeking remaining proceeds for the property must notify the [FGU] using a form prescribed by the department of treasury. . . . Notice to a [FGU] under this section must be by personal service acknowledged by the [FGU] or by certified mail, return receipt requested.

At issue is whether Joseph's form was timely, given that it was delivered to a common mailroom on July 1, but not to petitioner's office until July 2.

Joseph argues that MCL 211.78t(2) does not specify whether notification that is made by mail is completed when Form 5743 is delivered to the FGU's mailroom, mailbox, office, or to the treasurer personally. We agree that it would be an interesting question if, because of mailing delays or internal procedures, Form 5743 were mailed timely but not received by July 1. But we refrain from engaging in that inquiry because this argument ignores § 78t(2)'s critical requirement that service by mail must be by return receipt requested, which Joseph did not request. A return receipt provides the sender with an electronic or physical delivery record showing the signature of the person who accepted the mailing. The requirement that notices sent by mail must be sent "return receipt requested" indicates that the Legislature intended notice to be effective when actually received by an employee in the FGU. See *Wigfall v Detroit*, 504 Mich 330, 343; 934 NW2d 760 (2019) (suggesting by analogy that all employees in the FGU are agents of the FGU for purposes of receiving notice).

Joseph asserts that any delay in the delivery of her notice was caused by the courthouse's mailroom employees. She argues that these employees may be deemed petitioner's agents for receiving and sorting mail in the miscellaneous mailbox and contends that she should not be penalized for their delayed delivery. Joseph cites no authority to counter that the delay in delivery was caused by Joseph's own failure to properly address her notice to petitioner. It is, on this record, undisputed that petitioner's office did not actually possess the notice until July 2.

Joseph next argues that the trial court erred by not finding that she substantially complied with the notice requirements. It is true that courts "are inclined to favor a liberal construction of notice requirements," that this judicial policy "is based on the theory that an inexpert layman with a valid claim should not be penalized for some technical defect," and that a notice requirement "should not receive so strict a construction as to make it difficult for the average citizen to draw a good notice." *Meredith v Melvindale*, 381 Mich 572, 579; 165 NW2d 7 (1969).

The facts of the present case do not trigger the reasons for liberally construing notice requirements. Section 78t(2) calls for completing a single-page form asking for basic information and Joseph presents no issues with completion of the form itself. The statute then states that, if mailed, the form must be sent by certified mail, return receipt requested. This mailing requirement does not require any particular legal knowledge, nor is the instruction difficult for the average citizen to follow, particularly considering the availability of assistance from the United States Postal Service or commercial mail carriers. There is also the additional, undisputed information presented at oral argument that Joseph had the assistance of legal counsel at the time of this mailing. Clearly, Joseph understood the deadline for submitting the notice was July 1 following the effective date of the foreclosure of the property. And all this information, as well as petitioner's full address, was included in the notice of foreclosure that was mailed to Joseph at her known addresses. In light of the foregoing, it cannot reasonably be said that the notice requirements of § 78t(2) raise concerns that an "inexpert layman" would be "penalized for some technical defect" or that strict compliance with the requirements would make it "difficult for the average citizen to draw good notice." *Meredith*, 381 Mich at 579.

The statutory scheme that the Legislature put in place as the sole mechanism for claiming any proceeds remaining after a tax-foreclosure sale and the satisfaction of the foreclosed property owner's tax debt does not have a substantial-compliance provision. And even if it had a substantial-compliance provision, that "provision should not be interpreted to nullify altogether the general rule that statutes should be interpreted consistent with their plain and unambiguous meaning." *Northern Concrete Pipe, Inc*, 461 Mich at 320-321 (holding that the plaintiff's construction lien was untimely when, even though the plaintiff submitted the required notice within the statutorily required period, the notice was returned twice for correction and, ultimately, accepted after the statutorily required period). Joseph has cited no authority for applying the substantial-compliance exception to a plain and unambiguous deadline such as the one in MCL 211.78t. For these reasons, we conclude that the trial court did not err by finding that Joseph's Form 5743 was untimely or by declining to apply the substantial-compliance exception to excuse the untimeliness of her notice.

Relatedly, Joseph also argues that the loss of her surplus proceeds is a harsh and unreasonable consequence for obtaining proof of delivery by electronic tracking rather than by a certification and return-receipt process.

This issue comes to us unpreserved, because Joseph did not argue in the trial court that enforcement of the mailing requirements in § 78t resulted in an unreasonably harsh consequence. See *Hein v Hein*, 337 Mich App 109, 114; 972 NW2d 337 (2021) ("Issues are considered preserved for appellate review if they are raised in the trial court and pursued on appeal."). This Court applies the raise-or-waive rule in civil cases. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023); slip op at 5. Because Joseph did not raise the issue in the trial court, we have no obligation to consider the issue. See *id*. at ___; slip op at 3. Nevertheless, Joseph is not entitled to relief because her argument does not address the reason for the trial court's denial of her motion to disburse, which was her own failure to meet the July 1 deadline for submitting her Form 5743 notice. Relief need not be considered when an appellant fails to dispute the basis of the trial court's ruling. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Accordingly, we decline to consider this issue

because it is not preserved and because Joseph has not addressed the basis of the trial court's denial of her motion to disburse.

## B. TAKINGS VIOLATION

The Estate and Joseph assert that petitioners' retention of surplus proceeds amounted to an unconstitutional taking.

Takings Clauses in the United States and Michigan Constitutions prohibit taking private property for public use without just compensation. US Const, Ams V and XIV; Const 1963, art 10, § 2. These provisions "do not prevent the government from establishing rules requiring property owners to take an affirmative act to preserve their rights in property." *Barry Treasurer*, ___ Mich App at ___; slip op at 4. There is no compensable taking when there exists "a statutory path for property owners to recover surplus proceeds, but the property owners fail[] to avail themselves of that procedure." *Muskegon Treasurer*, ___ Mich App at ___; slip op at 10, citing *Nelson v New York City*, 352 US 103, 110; 77 S Ct 195; 1 L Ed 2d 171 (1956).

The Estate and Joseph acknowledge this Court's holding in *Muskegon Treasurer* that: the respondents in that case did not have a compensable-takings claim because the Legislature provided a statutory pathway for claimants to recover any surplus proceeds due them, the petitioner followed the statutory scheme, and the respondents failed to take the minimally burdensome first step toward recovery by filing a notice of intent that was timely under § 78t(2). Nevertheless, the Estate and Joseph contend that *Nelson v New York City*, 352 US 103; 77 S Ct 195; 1 L Ed 2d 171 (1956), which this Court found persuasive on this issue in *Muskegon Treasurer*, has significant differences that render it inapt in the context of Michigan's foreclosure scheme. Accordingly, both parties urge this Court to issue a conflicting opinion under MCR 7.215(J)(1). These arguments are not persuasive.

Joseph and the Estate argue that, because MCL 211.78t infringes on a property owner's constitutionally guaranteed right to recover surplus proceeds, the reasoning in *Nelson* is inapplicable. This claim of error fails because neither the respondents in *Muskegon Treasurer*, nor the present parties have established that MCL 211.78t infringes foreclosed property owners' constitutionally protected right to recover proceeds remaining after the tax-foreclosure sale and the satisfaction of its tax debt and associated costs. See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 10.

The Estate and Joseph also argue that the statute at issue in *Nelson* allowed property owners to raise defenses or counterclaims in the foreclosure proceeding, in contrast to 78t, which requires a multistep process to recover excess proceeds. The Estate and Joseph do not explain how this procedural difference undermines this Court's reliance on *Nelson*'s holding that a compensable takings claim cannot exist when the Legislature has provided a valid procedure for foreclosed property owners to recover surplus proceeds. The Estate and Joseph cannot obtain relief by simply announcing a position and then leaving it to this Court to do the rest. See *ER Drugs v Dep't of Health & Human Servs*, 341 Mich App 133, 146-147; 988 NW2d 826 (2022).

The Estate argues that this Court erred in *Muskegon Treasurer* by failing to recognize that *Nelson* did not involve a takings claim because that issue had not been preserved. Joseph suggests

that the New York Legislature's predecision amendment of the statute to lessen some of its harshness rendered *Nelson*'s holding practically moot. However, even postamendment, it appears that the recovery of property still required compliance with certain procedures. See *Nelson*, 352 US at 110-111. Neither party has given us any reason to believe that *Nelson*'s holding would not apply to takings claims raised by residents who failed to follow the new procedures.

Lastly, the Estate urges this Court to issue a conflicting opinion on the basis that *Hall v Meisner*, 51 F4th 185 (CA 6, 2022), defined the federally protected right as originating at the time of the foreclosure, which the Estate asserts signifies that "there are some attributes of this right that are different than state rights under *Rafaeli*." Again, the Estate leaves it to this Court to identify what those attributes might be and how they call for a decision different from that in *Muskegon Treasurer*. See *ER Drugs*, 341 Mich App at 146-147. And the Estate fails to distinguish the factual and legal context of *Hall* from that of the present case. The properties in *Hall* were foreclosed on before legislation was passed to codify and give full effect to the rights recognized in *Rafaeli*. Because these protections were not available to the *Hall* plaintiffs, and because the county's foreclosure practice amounted to "strict foreclosure," it could be said that, in *Hall*, an unconstitutional taking occurred at foreclosure. There was no compensable taking in *Muskegon Treasurer*, however, because the respondents had a statutory scheme that protected their right to remaining proceeds. Given these factual and legal differences between *Hall* and *Muskegon Treasurer*, the Estate's implication that *Hall* compels a conflicting opinion fails.

Petitioners followed the statutory scheme, but the Estate and Joseph failed to enforce their constitutional rights by not availing themselves of the provided means of recovery.

## C. DUE-PROCESS VIOLATIONS

The Estate and Joseph assert violations of procedural and substantive due process. The United States and Michigan Constitutions "guarantee that no state shall deprive any person of life, liberty or property, without due process of law." *Cummins v Robinson Twp*, 283 Mich App 677, 700; 770 NW2d 421 (2009) (quotation marks and citation omitted). See US Const, Ams V and XIV; Const 1963, art 1, § 17. These guarantees have procedural and substantive components that protect individual liberty and vested property interests "against certain government actions regardless of the fairness of the procedures used to implement them." *Cummins*, 283 Mich App at 700 (quotation marks and citation omitted). See also *Souden v Souden*, 303 Mich App 406, 413; 844 NW2d 151 (2013) (indicating that due-process protections apply to vested property rights).

The Estate and Joseph argue that petitioners' notices did not satisfy procedural due process because they did not notify the Estate or Joseph that petitioners were going to confiscate surplus proceeds nor identify the amount of surplus proceeds to be confiscated. The due-process arguments pertain to the statutory scheme per se, not specifically to the notices that petitioners sent in these cases. An alternative process might be one in which FGUs inform foreclosed property owners of the results of the sale or transfer of their properties and provide a means for them to claim excess proceeds, regardless of whether they timely filed Form 5743. Some states have adopted this type of notice, but Michigan has not. This Court held in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 8, that the statutory scheme for recovering remaining proceeds satisfied due process and that, "[i]f the statutory scheme is followed by the former owner and FGU, there will be no constitutional deprivation like the one in *Rafaeli*." "So long as the statutory scheme

-9-

adopted by our Legislature comports with due process—and MCL 211.78t does—whether such a scheme makes sense or not, or whether a 'better' scheme could be devised, are policy questions for the Legislature, not legal ones for the Judiciary." *Id.* at ___; slip op at 9 (citation omitted).

As to substantive due process, the Estate and Joseph argue that both MCL 211.78t(2)'s procedural deadline and the confiscation of surplus proceeds on the basis of that deadline is subject to strict scrutiny, that Form 5743 serves no valid purpose, and that the mechanics of its submission are unduly burdensome. However, this Court observed in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 9 (quotation marks and citation omitted), that "[w]hen, as here a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." The constitutional claims, therefore, must be analyzed under the Takings Clause and under guarantees of procedural due process rather than as violations of substantive due process. See *id.*; see also *Barry Treasurer*, ___ Mich App at ___; slip op at 3. As indicated, the arguments regarding both issues fail.

Lastly, the Estate argues that the July 1 notice deadline in § 78t(2) should not be enforced. The Estate contends that the deadline is unreasonable because it occurred before the Estate knew whether it would have a claim for surplus proceeds, that enforcement of the deadline resulted in the too-harsh consequence of the loss of more than $30,000 in surplus proceeds, and that the 90-day window for filing Form 5743 is unduly burdensome. Although the Estate argued in the circuit court that the deadline in MCL 211.78t(2) was unconstitutional for various reasons, it did not raise the harsh-and-unreasonable-consequences argument that it now raises on appeal. Therefore, this issue is not preserved. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). This Court applies the raise-or-waive rule in civil cases. *Tolas*, ___ Mich App at ___; slip op at 5. Because the Estate did not raise the issue in the circuit court, we are not obligated to consider the issue. See *id.* at ___; slip op at 3. We "may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id.* (quotation marks and citation omitted). The Estate concedes that its arguments regarding this issue are the same as those considered and rejected by this Court in *Muskegon Treasurer*; that this Court is bound by that decision; and, therefore, that it is not entitled to relief on this issue. Accordingly, we decline to consider the issue in this appeal.

As the Estate and Joseph concede, this Court considered and rejected the arguments that they advance in the foregoing issues in *Muskegon Treasurer*. Although both parties urge us to issue an opinion that conflicts with *Muskegon Treasurer*, neither has provided any legal reason for doing so, nor have they argued any distinguishing facts that render our holdings in *Muskegon Treasurer* inapplicable in the present case.

## D. APPLICABILITY OF MCL 600.5852

Unique to the Estate is the claim that the trial court erred by not applying the death-saving provision, MCL 600.5852, to toll the deadlines in § 78t. This Court recently held in *Barry Treasurer*, ___ Mich App at ___; slip op at 6, that MCL 600.5852 does not apply to toll the July 1 filing deadline under MCL 211.78t(2). As a result, this argument must fail.

-10-

MCL 600.5852(1) states as follows:

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action that survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run.

The decedent in *Barry Treasurer* died in 2018, without having paid his 2018 property taxes. The FGU foreclosed on the property in 2021 and sold it at a tax-foreclosure sale later that year for $40,000. In April 2022, the decedent's heir opened an estate. Shortly thereafter, the estate moved for an order compelling the FGU to distribute to the estate the approximately $36,475 in surplus proceeds remaining after satisfaction of the decedent's tax debt and related costs. The FGU opposed the motion on grounds that neither the estate nor the decedent's heir had complied with the July 1, 2021 notice requirement of § 78t(2); therefore, the estate, and the decedent's heir, had forfeited any right that they might have to the surplus proceeds. The estate argued, among other things, that failure to meet the filing requirement did not bar its claim because the saving provision in MCL 600.5852 gave it two years after letters of authority were issued to bring an action for the recovery of surplus proceeds. The circuit court rejected the estate's argument and entered an order denying the estate's motion. *Id*. at ___; slip op at 2.

This Court affirmed the circuit court's order on appeal, expressly rejecting the estate's argument that MCL 600.5852 governed the case. *Id*. at ___; slip op at 6. This Court determined that the death-saving provision did not apply for two reasons. First, the decedent's claim for surplus proceeds did not survive his death by operation of law. This Court reasoned that "the death-saving provision applie[d] only to claims that survive a decedent's death by operation of law. Any claim to surplus proceeds accrued after foreclosure of the property, so the claim was not in existence when [the decedent] died." *Id*. at ___; slip op at 7. In fact, the right to surplus proceeds arguably passed to the decedent's heir after the decedent's 2018 death because title to the property passed to the heir after the decedent died. *Id*., citing MCL 700.2103; *Pardeike v Fargo*, 344 Mich 518, 522; 73 NW2d 924 (1955) ("Upon the death of the owner of real estate, title passes to and vests in the heirs, not to the personal representatives."); *Mich Trust Co v Grand Rapids*, 262 Mich 547, 550; 247 NW2d 744 (1933) ("[T]he title to real estate descends immediately to [the decedent's] heirs, subject to be divested for the payment of decedent's debts."). Accordingly, the person who could have redeemed the property before foreclosure or signaled his intent to claim any proceeds remaining after the tax-foreclosure sale was the decedent's heir. *Barry Treasurer*, ___ Mich App at ___; slip op at 7. Second, this Court concluded that application of MCL 600.5852 was precluded by "the Legislature's provision of an exception to the preclusive effect of MCL 211.78t(2) in MCL 211.78*l*(1)." *Id*. at ___; slip op at 6.

Applying the holding in *Barry Treasurer* to the Estate here, the claim for surplus proceeds had not arisen at the time of McGee's death and, therefore, did not survive her death. The Estate urges this Court to construe "action" in MCL 600.5852(1) as meaning that the decedent's right to recover proceeds at a future date survived her death. However, to the extent that the right to recover surplus proceeds follows title to the property, the legal interest in surplus proceeds passed with the property to the decedent's heir(s) after the decedent's death. See *id*.; *In re Emmet Co*

*Treasurer for Foreclosure*, ___ Mich App ___, ___; ___ NW2d ___ (2023); slip op at 4-6. Given these facts, even if MCL 600.5852(1) did apply, it would not apply here. The Estate has not argued that MCL 211.78*l* applies.

For the foregoing reasons, we conclude that the circuit court did not err by concluding that MCL 600.5852 did not apply to toll the filing deadline in § 78t(2).

## E. CONSTRUCTIVE TRUST

Lastly, the Estate and Joseph contend that petitioners' confiscation of the surplus proceeds on the basis of a procedural technicality supports a claim of unjust enrichment. Again, we disagree.

Unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). Unjust enrichment is grounded in the idea that a party "shall not be allowed to profit or enrich himself inequitably at another's expense." *McCreary v Shields*, 333 Mich 290, 294; 52 NW2d 853 (1952) (quotation marks and citation omitted). An unjust-enrichment claim can arise when a party "has and retains money or benefits which in justice and equity belong to another." *Id.* (quotation marks and citation omitted). "The remedy for unjust enrichment is restitution." *Wright*, 504 Mich at 418.

"When a statute governs resolution of a particular issue, a court lacks the authority to invoke equity in contravention of the statute." *Thomas v Dutkavich*, 290 Mich App 393, 413 n 9; 803 NW2d 352 (2010). As our Supreme Court has explained, "[r]egardless of how unjust the statutory penalty might seem to this Court, it is not our place to create an equitable remedy for a hardship created by an unambiguous, validly enacted, legislative decree." *Stokes v Millen Roofing Co*, 466 Mich 660, 672; 649 NW2d 371 (2002) (quotation marks and citation omitted).

We reject the attempt to frame the operation of MCL 211.78t as resulting in petitioners' unjust enrichment. The Legislature provided an exclusive, validly enacted, constitutional scheme by which former property owners can recover remaining proceeds, and petitioners complied with the scheme. The statutory scheme created by our Legislature mandates how FGUs are to use the monies from tax-foreclosure sales and leaves FGUs no discretion to disburse remaining proceeds to foreclosed property owners who did not comply with the requirements of MCL 211.78t. See MCL 211.78m(8). Under these circumstances, an equitable remedy would contravene the Legislature's clearly stated intent and essentially reduce MCL 211.78t to a nullity. See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 5 ("The specific language of MCL 211.78t indicates our Legislature's intent for the statute to serve as the sole mechanism by which former property owners can recover proceeds remaining after the sale or transfer of their foreclosed properties and the satisfaction of their tax debt and related costs."). Because the Legislature provided a duly enacted, constitutionally valid statutory means of recovering proceeds remaining from a tax-foreclosure sale in excess of the tax debt, restitution under a theory of unjust enrichment is not warranted.

Affirmed.

/s/ Michael F. Gadola
/s/ Sima G. Patel
/s/ Adrienne N. Young

-12-